# EXHIBIT 5

LEXSEE 144 FED. APPX. 54


Caution
As of: Mar 14, 2007

RONNY BARROW, ROSEMARY FERGUSON, CURTIS GREEN, WILLIE JANUARY, TONY LETT, RANDY MAYE, NATHANIEL RICHARDSON, GEORGIA WILLIAMS, Plaintiffs-Appellants, versus GEORGIA PACIFIC CORPORATION, Defendant-Appellee.

No. 04-10937

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

*144 Fed. Appx. 54; 2005 U.S. App. LEXIS 17401*

August 12, 2005, Decided
August 12, 2005, Filed

**NOTICE:** [**1] NOT FOR PUBLICATION

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of Alabama. D. C. Docket No. 01-00141-CV-BH-M.

**COUNSEL:** For Ronny Barrow, Rosemary Ferguson, Curtis Green, Willie January, Tony Lett, Randy Maye, Appellants: Ronnie L. Williams, Attorney at Law, Mobile, AL.

For Georgia Williams, Appellant, Pro se, Monroeville, AL.

For Georgia Pacific Corporation, Appellee: Brendon T. McLeod, Frederick C. Dawkins, Richard Gerakitis, Troutman Sanders, LLP, ATLANTA, GA.; David E. Slovensky, AGL Resources Inc., ATLANTA, GA.

**JUDGES:** Before EDMONDSON, Chief Judge, BIRCH and COX, Circuit Judges.

**OPINION:** [*55] PER CURIAM:

Ronny Barrow, Rosemary Ferguson, Curtis Green, Willie January, Tony Lett, Randy Maye, Nathaniel Richardson and Georgia Williams appeal the summary judgment entered for Georgia Pacific Corporation ("GP") on their race discrimination claims under *42 U.S.C. section 1981*. We affirm.

**Standard of Review**

We review a grant of summary judgment de novo. See *Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co., 111 F.3d 852, 858 (11th Cir. 1997)*. Summary judgment is appropriate when "there is no genuine issue [**2] as to any material fact and [*56] . . . the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995)*.

**Discussion**

The employees join in their complaint and in this appeal a variety of individual claims of disparate treatment under *section 1981*. All of the employees allege a hostile work environment based on race, but Georgia Williams does not appeal the summary judgment against her complaint of hostile work environment. Ronny Barrow alleges that GP did not promote him because of his race. Rosemary Ferguson alleges that she was transferred and constructively discharged because she is married to an African American. Georgia Williams alleges that she was transferred because of her race. The district court severed the employees' claims for trial and entered separate opinions and summary judgments for GP against each employee. Although the employees contend that they endured "shared experiences" and [**3] that the

harassment they faced was similar, they do not contend that their claims are interdependent.

A. Hostile Work Environment Claims

A plaintiff establishes a hostile work environment claim by showing "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment . . . [was] based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). The fourth element, whether the conduct was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," is the element that often tests the legitimacy of most harassment claims; and that test is true here. *Gupta v. Fla. Bd. Of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).

To establish that harassing conduct was severe or pervasive, an employee [**4] must meet both a subjective and objective test. See *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999). The employee must establish not only that he subjectively perceived the environment as hostile, but that a reasonable person would perceive the environment to be hostile and abusive. See *Watkins v. Bowden*, 105 F.3d 1344, 1355-56 (11th Cir. 1997). The "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 126 L. Ed. 2d 295, 114 S.Ct. 367, 370 (1993) (internal quotations and citations omitted). "Racial slurs spoken by co-workers have to be so 'commonplace, overt and denigrating that they create[] an atmosphere charged with racial hostility.'" *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990). Only when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the employment and create an abusive working [**5] environment," is the law violated. *Harris*, 114 S.Ct. at 370 (internal quotations and citations omitted).

[*57] Seven of the employees, Ronny Barrow, Rosemary Ferguson, Curtis Green, Willie January, Tony Lett, Randy Maye, and Nathaniel Richardson, contend that the district court erred in granting summary judgment against their hostile work environment claims. The district court concluded that each employee failed to establish that the harassment was sufficiently severe or pervasive to alter the working conditions. We agree.

Green's allegations are the most substantial and consists of two categories: racial symbols and racial slurs. About the racially offensive symbols, Green testified that he saw displays of the rebel flag on tool boxes and hard hats, the letters "KKK" on a bathroom wall and on a block-saw console, and a noose in another employee's locker. About the racial slurs, Green testified that Mike Faulkner, a superintendent on the first shift, called Green "nigger" three times in one year, repeatedly called him "boy," and told him two or three times that he was going to kick Green's "black ass"; that his supervisor, Roland Duke, called him a "nigger" and told him [**6] that if he looked at "that white girl" he would "cut" him; that the superintendent of the Maintenance department called Green "black boy" on one occasion; and that Roy Black, another supervisor, once called him a "dumb ass."

GP set forth its Equal Employment Opportunity Policy ("EEOP") in an Employee Handbook which was distributed to all newly-hired employees. The Policy encourages employees to report harassment to their immediate supervisor and, if not satisfied with the response, to successively higher levels of supervision up to the Plant Human Resources Manager or Plant Manager. The Policy alternatively permits employees to bypass their supervisors and either 1) report harassment directly to the Plant Human Resources Manager or Plant Manager, 2) report to GP's corporate EEO department, or 3) make anonymous complaints through a toll-free complaint hotline operated by an outside vendor. All this information is posted throughout the plant, included in an annual letter to employees, and discussed at periodic plant training sessions.

The record is undisputed that Green failed to use the procedures and policies of GP for reporting racial harassment and that GP promptly remedied the [**7] offenses that did come to its attention upon the filing of this litigation. Green alleges that he complained to his supervisor, Duke, *only* about the incident that Faulkner called him a "nigger" and that Duke responded by saying "you is a nigger." Green testified that he understood the policy and procedure for reporting harassment, but Green did not report Faulkner's conduct to the Human Resources Manager or the plant manager upon receiving this unsatisfactory response from Duke, as provided by the harassment policy. Green also did not call the toll-free, complaint hotline where he could have left an anonymous complaint. Although GP never received a complaint of harassment from Green about the conduct he complained of in this lawsuit, Green admits that, after he filed his lawsuit, GP thoroughly investigated his complaint; and he was satisfied with the results of the investigation. GP interviewed Duke about his racial com-

ments, and Duke was subsequently terminated as a result of the investigation. GP also interviewed Faulkner, who admitted to using the word "nigger," although not in the manner alleged by Green. Faulkner was suspended without pay. And, the letters "KKK" have been [**8] removed.

Although the symbols and slurs about which he complains were discriminatory and offensive, Green has not presented evidence that the workplace was "permeated [*58] with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris, 114 S.Ct. at 370*. Green has presented evidence of isolated, sporadic instances of racial harassment over his more than fourteen years of employment with GP. The district court properly granted summary judgment against Green's hostile work environment claim.

Upon a review of the record, we conclude that the allegations of the other employees are less substantial -- both in terms of frequency and offensiveness -- than those of Green. Some allege that they saw the letters "KKK" and confederate flag decals, and suffered isolated, sporadic racial slurs. Nothing in the record shows that this offensive conduct occurred on a continuous basis or even for a short and intense period. Instead, the record reflects that these few comments occurred randomly throughout the employment. The allegations do not meet the standard [**9] of severe and pervasive harassment. See, e.g., *Harris, 114 S.Ct. at 370*; *Gupta, 212 F.3d at 583*. The district court, therefore, properly granted summary judgment. n1

n1 We note that in addition to failing to establish severe and pervasive harassment, most of the plaintiffs have failed to demonstrate a basis for holding GP liable. Out of these six employees, four never reported any kind of actionable racial discrimination to GP, although all admitted they understood the procedure for reporting harassment. And, of the two employees that did complain, one admitted that GP investigated his complaint and punished the person responsible for the harassment.

B. Barrow's Failure to Promote Claim

Barrow contends that he was denied several promotions to a repairman position because of his race. To prevail on a claim of failure to promote, a plaintiff must show (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite [**10] his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. See *Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000)*. The parties do not dispute that Barrow is a member of a protected class, he applied for the promotions, and the positions were given to white employees.

GP contends that Barrow was not qualified for the position, and it provides many reasons for his lack of qualification, such as Barrow's inadequate welding ability; lack of skills in the areas of hydraulics, pneumatics, mechanical transmission, and motor line-up; absenteeism; and failure to follow significant safety procedures. Barrow has not presented evidence of pretext. Barrow presented only his own unsubstantiated opinion that he was qualified for the position. Because Barrow did not establish that he was qualified for the position, the district court properly granted summary judgment.

C. Ferguson's Discriminatory Transfer and Constructive Discharge Claims

Ferguson argues that the district court erred in entering summary judgment against two of her claims of discrimination. The first is a purported transfer [**11] claim. The second is a claim of constructive discharge.

Ferguson contends that she was transferred based on her marriage to an African-American. Although Ferguson raised this argument in her reply brief in the district court, her complaint did not allege this claim, and the district court did not address it. Even if this claim was properly before us and we assumed that [*59] she could establish a prima facie case, Ferguson failed to rebut the legitimate, nondiscriminatory reason advanced by GP for her transfer. See *Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S.Ct. 1089, 1094 (1981)*; *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S.Ct. 1817, 1824 (1973)*. Ferguson held a temporary receptionist position; when the full-time receptionist returned from medical leave and no remaining clerical work remained for her to do, GP transferred Ferguson to a utility position inside the plant.

Ferguson also contends that she was constructively discharged based on the hostile work environment and racial harassment. To maintain a constructive discharge claim based on hostile work environment, Ferguson must show that her working conditions were "so difficult . . . that a reasonable [**12] person would have felt compelled to resign." *Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001)* (internal quotation marks and citations omitted). "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment," *Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001)*.

Ferguson, as explained, failed to meet even the standard for a hostile work environment. She cannot, therefore, meet the higher standard for constructive discharge.

D. Williams's Ineffective Assistance and Discriminatory Transfer Claims

Georgia Williams, proceeding pro se, alleges that she received ineffective assistance of counsel and that GP discriminatorily transferred her. Both claims fail. "[A] . . . party does not have any right to a new trial in a civil suit because of inadequate counsel, but has as its remedy a suit against the attorney for malpractice." *Mekdeci By and Through Mekdeci v. Merrell Nat. Laboratories, 711 F.2d 1510, 1522-23 (11th Cir. 1983)* (quoting *Watson v. Moss, 619 F.2d 775, 776 (8th Cir.1981)*).

Williams also argues that [\*\*13] GP transferred her from a Greened utility position to a Dryers utility position because of her race. She alleges that GP moved a white woman into her job and paid other employees overtime to perform her job. To establish a prima facie case of discriminatory transfer, a plaintiff must show that she 1) was a member of a protected class, 2) was qualified, 3) suffered an adverse employment action, and 4) was replaced by someone outside the protected class. *Hinson v. Clinch County, Geogia Bd. of Educ., 231 F.3d 821, 828 (11th Cir. 2000)*. An adverse employment action results in a serious and material change in the terms, conditions, or privileges of employment. See *Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001)*. The employee's subjective view of the significance and adversity of the employer's act is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. See *id. at 1239-40*.

Williams cannot establish that she suffered an adverse employment action. GP contends that Williams's job duties and responsibilities were essentially the same in her new position [\*\*14] as they were in her previous position. Williams has not presented admissible evidence to refute this fact. Her bald assertion that her "job responsibilities changed substantially" is insufficient to withstand summary judgment. See *Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)*. The district court, therefore, properly granted summary judgment on Williams's discriminatory transfer claim.

[\*60] Conclusion

For the foregoing reasons, the judgments of the district court are **AFFIRMED.**