UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NICOLE TAYLOR REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BIG LOTS STORES, INC., | ) | 2:06-CV-00380-MHT-CSC |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT BIG LOTS STORES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Big Lots Stores, Inc. ("Big Lots"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits its Statement of Undisputed Material Facts in support of Motion for Summary Judgment, stating as follows:

**I.    PLAINTIFF'S EMPLOYMENT WITH BIG LOTS**

1.

Plaintiff Nicole Taylor Reed ("Plaintiff") is a black female.  (Pl.'s Dep. 42:19-22.)

2.

Plaintiff has a very poor memory; it is very hard for her to remember things that occurred years ago.  (Pl.'s Dep. 21:6-14.)

3.

Plaintiff has a Bachelor of Science degree in human resource management.  (Pl.'s Dep. 49:17-23.)

4.

Plaintiff was hired by Big Lots on December 13, 2003, to work as a part-time cashier. (Pl.'s Dep. 110:1-19.)[1]

---

[1] A copy of the cited excerpts of Plaintiff's deposition is attached as Exhibit A.

5.

Plaintiff worked at Big Lots Store No. 818 in Montgomery, Alabama throughout her employment with Big Lots.  (Pl.'s Dep. 110:12-19.)

6.

Jerry Culpepper served as Store Manager at Big Lots Store No. 818 during Plaintiff's employment.  (Pl.'s Dep. 128:12-129:1.)

7.

Billy Pridgen served as an Assistant Manager at Big Lots Store No. 818 during Plaintiff's employment.  (Pl.'s Dep. 125:15-17.)

8.

Gerald Michael ("Mike") Williams served as an Associate Manager at Big Lots Store No. 818 during Plaintiff's employment, from December 20, 2004 through April 11, 2005.  (Pl.'s Dep. 142:17-23; Abrams Aff. ¶¶ 5, 7.)[2]

9.

Culpepper and Pridgen gave Plaintiff only positive evaluations during her employment at Big Lots.  (Pl.'s Dep. 134:1-4.)

10.

Throughout her employment at Big Lots, Plaintiff always performed all of the duties and responsibilities that were asked of her.  (Pl.'s Dep. 136:3-7.)

11.

_____

[2] A copy of Sharon Abrams's affidavit is attached as Exhibit B.

Throughout her employment at Big Lots, Plaintiff performed her job duties well.  (Pl.'s Dep. 134:17-19; 136:8-10.)

12.

Plaintiff was never reprimanded, disciplined, demoted, or punished in any way while working at Big Lots.  (Pl.'s Dep. 134:9-16.)

13.

Plaintiff's employment with Big Lots ended effective January 11, 2006, because Store No. 818 where she worked was closed permanently.  (Pl.'s Dep. 253:19-254:4.)

II.     **BIG LOTS' ASSOCIATE HANDBOOK AND POLICIES**
         A.     <u>**Associate Handbook**</u>

3.

Shortly after her hire, Plaintiff received an Associate Handbook and signed an acknowledgment that she received the handbook.  (Pl.'s Dep. 111:21-112:7; <u>see also</u> 113:20-114:5.)

4.

Throughout Plaintiff's employment with Big Lots, the Associate Handbook distributed to all employees contained Big Lots' Equal Employment Opportunity policy, Harassment-Free Environment policy, Open Door policy, and Standards of Conduct policy.  (Abrams Aff. ¶ 3.)

5.

Copies of Big Lots' Equal Employment Opportunity policy, Harassment-Free Environment policy, Open Door policy, and Standards of Conduct policy in place throughout

Plaintiff's employment are attached to Sharon Abrams's affidavit as Exhibits A – D, respectively. (Abrams Aff. ¶ 4.)

## B.     Equal Employment Opportunity Policy

### 3.

During her employment, Plaintiff was aware of Big Lots' Equal Employment Opportunity policy and that such policy prohibits discrimination based on, among other things, race, color, or sex. (Pl.'s Dep. 114:6-19; see also Pl.'s Dep. Ex. 6.)

### 4.

Big Lots' Equal Employment Opportunity policy states: "Any formal or informal allegation that this policy has been violated should be referred immediately to Human Resources." (Pl.'s Dep. 112:12-20; Pl.'s Dep. Ex. 6.)

### 5.

Plaintiff understood that under Big Lots' policy, the Human Resources department was one place to raise complaints. (Pl.'s Dep. 114:20-115:13.)

## C.     Harassment-Free Environment Policy

### 3.

Plaintiff was aware of Big Lots' Harassment-Free Environment policy, which prohibits harassment and discrimination based on race, color, or sex. (Pl.'s Dep. 115:14-22; 117:9-13; see also Pl.'s Dep. Ex. 7.)

### 4.

Big Lots' Harassment-Free Environment policy states: "Any associate who believes he/she has been the subject of harassment is responsible for promptly reporting the alleged act to Human Resources or his/her immediate supervisor." (Pl.'s Dep. 115:14-22; 117:9-118:18; Pl.'s Dep. Ex. 7.)

5.

Plaintiff was aware of Big Lots' complaint procedure under the Harassment-Free Environment policy during her employment. (Pl.'s Dep. 118:1-18.)

### D.  **Open Door Policy**

3.

Big Lots' Open Door policy states: "Any associate with a question or problem is entitled to use the Open Door [p]olicy and may contact anyone in the organization." (Pl.'s Dep. 118:19-119:3; Pl.'s Dep. Ex. 8.)

4.

The Open Door policy further provides that an associate may take his or her "question or concern to [the] immediate supervisor or manager[,] or . . . to the next level manager[,] or [to the] Human Resources Department." (Pl.'s Dep. 118:19-119:3; Pl.'s Dep. Ex. 8.)

5.

The Open Door policy also provides that associates may make anonymous complaints by calling the Get Real Hotline, which is a toll-free complaint number. (Pl.'s Dep. 118:19-119:3; Pl.'s Dep. Ex. 8.)

6.

Plaintiff received training on Big Lots' Get Real Hotline.  (Pl.'s Dep. 122:14-16.)

### E.    Standards of Conduct Policy

#### 3.

Big Lots' Standards of Conduct policy provides that violations of Big Lots' policy, including the Harassment-Free Environment policy, will not be tolerated.  (Pl.'s Dep. 123:5-12; Pl.'s Dep. Ex. 9.)

#### 4.

The Standards of Conduct policy states:  "Associates are expected to comply with this [p]olicy and report violations immediately."  (Pl.'s Dep. 123:5-12; Pl.'s Dep. Ex. 9.)

## III.    PLAINTIFF'S TWO EEOC CHARGES
### A.    June 23, 2005 Charge

#### 4.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") against Big Lots, Charge No. 130-2005-05212, on June 23, 2005 ("June 23 EEOC charge").  (Pl.'s Dep. 139:5-17; see also Pl.'s Dep. Ex. 18.)[3]

#### 5.

Plaintiff's June 23 EEOC charge alleged race and sex harassment.  (Pl.'s Dep. 139:5-17; 252:21-253:1; Pl.'s Dep. Ex. 18.)

#### 6.

---

[3] A copy of Plaintiff's June 23, 2005 EEOC charge (Pl.'s Dep. Ex. 18) is attached as Exhibit C.

Plaintiff indicated on the June 23 EEOC charge that the alleged harassment took place between March 28 and March 30, 2005.  (Pl.'s Dep. 140:16-20; Pl.'s Dep. Ex. 18.)

7.

Plaintiff attached to her June 23 EEOC charge Exhibit A, which contains facts underlying the charge.  (Pl.'s Dep. Ex. 18 at Ex. A.)

8.

Plaintiff testified that the paragraph in Exhibit A to her June 23 EEOC charge about other comments and statements made during the last 180 days refers to incidents other than the pictures allegedly made by Mike Williams.  (Pl.'s Dep. 195:6-12; see also 195:13-23; Pl's Dep. Ex. 18 at Ex. A pp. 1-2.)

9.

The pictures allegedly made by Williams about which Plaintiff complained in her June 23 EEOC charge are attached to the charge as Exhibit B.  (Pl.'s Dep. 145:18-22; Pl.'s Dep. Ex. 18 at Ex. B.)

10.

On June 29, 2005, the EEOC issued a Dismissal and Notice of Rights as to Plaintiff's June 23 EEOC charge, and Plaintiff received the Dismissal and Notice of Rights on or about June 29, 2005.[4]  (Pl.'s Dep. 184:3-19; Pl.'s Dep. Ex. 19.)

11.

---

[4] A copy of the Dismissal and Notice of Rights for the June 23, 2005 EEOC charge (Pl.'s Dep. Ex. 19) is attached as Exhibit D.

The Dismissal and Notice of Rights Plaintiff received with respect to her June 23 EEOC charge expressly stated: "Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this Notice**; or your right to sue based on this charge will be lost." (Pl.'s Dep. Ex. 19.)

12.

In addition to receiving the Dismissal and Notice of Rights, Plaintiff also received correspondence from Allen Gosa of the EEOC, dated June 29, 2005, informing her that the June 23 EEOC charge had been dismissed. (Pl.'s Dep. 185:8-186:2.)

## B.    <u>September 22, 2005 Charge</u>

4.

Plaintiff filed a second charge of discrimination against Big Lots with the EEOC, Charge No. 130-2005-06904, on September 22, 2005 ("September 22 EEOC charge").[5]   (Pl.'s Dep. 187:2-19; Pl.'s Dep. Ex. 21.)

5.

Plaintiff filed the September 22 EEOC charge because the EEOC had dismissed her June 23 EEOC charge. (Pl.'s Dep. 189:6-11.)

6.

Plaintiff's September 22 EEOC charge also alleged harassment based on her race and sex. (Pl.'s Dep. 190:20-191:1; 252:21-253:1; Pl.'s Dep. Ex. 21 at Ex. A.)

7.

---

[5] A copy of Plaintiff's September 22, 2005 EEOC charge (Pl.'s Dep. Ex. 21) is attached as Exhibit E.

Plaintiff's September 22 EEOC charge is based on alleged conduct that took place between March 28 and 30, 2005. (Pl.'s Dep. Ex. 21.)

8.

Plaintiff's September 22 EEOC charge is based on the same incidents and allegations of harassment as her June 23 EEOC charge. (Pl.'s Dep. 142:8-16; 190:20-191:1; 191:19-23; 195:6-23; Pl.'s Dep. Ex. 21.)

9.

Plaintiff's Exhibit A attached to her September 22 EEOC charge contains all of the allegations on which she based that charge. (Pl.'s Dep. 191:5-8; Pl.'s Dep. Ex. 21 at Ex. A.)

10.

The EEOC issued a Dismissal and Notice of Rights regarding Plaintiff's September 22 EEOC charge on February 6, 2006, and Plaintiff received such document on or about such date.[6] (Pl.'s Dep. 250:10-251:15; see also Pl.'s Dep. Ex. 25.)

11.

The EEOC concluded that Plaintiff's allegations in the September 22 EEOC charge did not establish a violation of any of the statutes enforced by the EEOC. (Pl.'s Dep. 251:16-23; Pl.'s Dep. Ex. 25.)

12.

Plaintiff never amended or changed the two EEOC charges she filed with the EEOC. (Pl.'s Dep. 252:16-20.)

---

[6] A copy of the EEOC's Dismissal and Notice of Rights for the September 22, 2005 EEOC charge (Pl.'s Dep. Ex. 25) is attached as Exhibit F.

IV.    **PLAINTIFF'S CLAIMS IN THIS LAWSUIT**

5.

The only claims Plaintiff alleges in this lawsuit are hostile work environment under Title VII based on her race and sex.  (Pl.'s Dep. 136:15-137:3; 254:9-19; Compl. ¶¶ 4, 6.)

6.

Plaintiff's termination is not part of her claims in this lawsuit, and she is not alleging retaliation.  (Pl.'s Dep. 253:19-254:8; 255:21-23.)

V.    **PLAINTIFF'S SPECIFIC ALLEGATIONS OF HARASSMENT**

A.    **Alleged August 2003 Comment by Billy Pridgen**

6.

Plaintiff testified that on August 4, 2003, she walked into the breakroom with a bandanna around her head and Billy Pridgen said:  "All you need now is a bag of grits."  (Pl.'s Dep. 238:17-240:14.)

7.

Plaintiff does not know why Pridgen made this comment.  (Pl.'s Dep. 244:9-11.)

8.

When asked whether it was just her speculation or personal belief that Pridgen's comment had something to do with her race, Plaintiff testified:  "I'm almost sure of it, yes." (Pl.'s Dep. 247:22-248:2.)

9.

Plaintiff does not know whether Pridgen ever made the same comment to a white employee.  (Pl.'s Dep. 244:14-245:4.)

10.

Plaintiff does not know whether Pridgen made this alleged comment because of her sex. (Pl.'s Dep. 244:9-13; 247:18-21.)

11.

Plaintiff testified that she reported this comment to a manager senior to Pridgen. (Pl.'s Dep. 248:14-249:6.)

12.

The day after Pridgen made the comment, he apologized to Plaintiff and never made any similar comments to Plaintiff thereafter. (Pl.'s Dep. 249:7-14; 250:5-9.)

13.

This alleged comment by Pridgen occurred nearly two years prior to Plaintiff's filing of her first EEOC charge (the June 23, 2005 charge). (Pl.'s Dep. 242:17-22.)

14.

Plaintiff did not include this comment in her first EEOC charge because it occurred so long before she filed the charge. (Pl.'s Dep. 243:5-14.)

15.

Plaintiff testified that this alleged comment by Pridgen was an isolated incident, unrelated to any other incidents. (Pl.'s Dep. 243:15-244:5.)

**B.      Picture of Plaintiff on Play Money**

6.

Mike Williams took pictures of store employees to make name badges in March 2005. (Pl.'s Dep. 143:20-144:3; 145:6-9.)

7.

On or about March 30, 2005, Linda Sankey, another Big Lots employee, showed Plaintiff a picture of Plaintiff, as well as other Big Lots employees, on a fake $100 bill.  (Pl.'s Dep. 150:3-152:21; see also Pl.'s Dep. Ex. 18 at Ex. B.)

8.

It is Plaintiff's belief that Williams created these pictures.  (Pl.'s Dep. 145:23-146:3.)

9.

Plaintiff attached these pictures to her first EEOC charge (the June 23, 2005 charge) as Exhibit B.  (Pl.'s Dep. 145:10-22; Pl.'s Dep. Ex. 18 at Ex. B.)

10.

Plaintiff testified she believes the pictures were made on March 29 and 30, 2005.  (Pl.'s Dep. 145:6-13; 176:22-177:3.)

11.

Plaintiff heard the pictures were hung by the time clock, but she never saw the pictures posted and has no personal knowledge of them being posted.  (Pl.'s Dep. 147:1-148:17; 151:15-152:5; 152:6-153:14.)

12.

Plaintiff only saw the pictures because one of her coworkers, Linda Sankey or Autherine Croskey showed them to her.  (Pl.'s Dep. 148:1-17; 169:19-170:1; see also 147:21-23.)

13.

Some of the pictures showed Plaintiff's and other employees' pictures superimposed onto play or fake money.  (Pl.'s Dep. 150:3-151:2; Pl.'s Dep. Ex. 18 at Ex. B.)

14.

Plaintiff's picture was superimposed on a fake $100 bill; this was the only picture on which Plaintiff was depicted.  (Pl.'s Dep. 146:4-7; 150:3-17; 159:7-15; 275:4-6; Pl.'s Dep. Ex. 18 at Ex. B.)

15.

Plaintiff testified that she was not affected by the pictures that do not depict her.  (Pl.'s Dep. 148:18-22; 159:7-15.)

16.

Plaintiff does not know whether white or male employees also had their pictures superimposed on fake money by Williams.  (Pl.'s Dep. 153:15-155:15; 169:8-13.)

17.

Aside from the fact that many of pictures included black female employees, Plaintiff testified the picture did not have anything to do with her race or gender.  (Pl.'s Dep. 157:15-158:3; 158:15-159:6; 161:5-163:20; Pl.'s Dep. Ex. 18 at Ex. B.)

18.

Plaintiff admitted the majority of the employees at Store 818 were black and female. (Pl.'s Dep. 158:4-10.)

19.

Plaintiff acknowledged Jerry Culpepper, a white male, also appeared in several of the pictures. (Pl.'s Dep. 146:17-21; 159:16-160:9; Pl.'s Dep. Ex. 18 at Ex. B.)

20.

Plaintiff does not have any idea why Williams allegedly made the pictures. (Pl.'s Dep. 163:17-164:7; 168:17-169:7.)

21.

Plaintiff does not know whether Williams, a relatively new employee, created the pictures to break the ice and get to know people. (Pl.'s Dep. 156:6-157:4.)

22.

Plaintiff found her picture on the play money to be objectionable because the statement "bogus cash" appeared on the play money. (Pl.'s Dep. 157:9-14; <u>see also</u> Pl.'s Dep. Ex. 18 at Ex. B.)

23.

Plaintiff testified the pictures "discredit[ed] the person" pictured because the statement "bogus cash" meant that the person pictured was "as bogus as th[e] note." (Pl.'s Dep. 155:17-156:5; 157:9-14.)

24.

Plaintiff was did not find the name badge pictures on page 3 of Exhibit B to her EEOC charge to be objectionable based on race or gender. (Pl.'s Dep. 165:20-23; 167:12-20; <u>see also</u> Pl.'s Dep. Ex. 18 at Ex. B.)

25.

Plaintiff casually mentioned the pictures to Culpepper on March 30, 2005, but did not tell him she had a problem with the pictures and she did not complain to Culpepper, any other manager, or anyone in Big Lots' Human Resources department regarding the pictures.  (Pl.'s Dep. 172:7-175:3.)

26.

After Plaintiff mentioned the pictures to Culpepper, she worked the rest of the day and did not think about the pictures.  (Pl.'s Dep. 173:10-15.)

27.

On April 5, 2005, Williams was given a final counseling session and written Disciplinary Counseling for violation of Big Lots' Standards of Conduct based on his misconduct of superimposing face pictures of store associates and the Store Manager (Jerry Culpepper) on other various pictures and fake money.[7]  (Abrams Aff. ¶ 6.).

28.

Once Big Lots learned of the pictures and disciplined Williams, there were no more such pictures.  (Pl.'s Dep. 180:12-17.)

29.

Williams resigned from his employment with Big Lots effective April 11, 2005, shortly after his final counseling session on April 5, 2005.  (Abrams Aff. ¶ 7.)

30.

---

[7] A copy of the written Disciplinary Counseling issued to Williams by Big Lots is attached as Exhibit E to Sharon Abrams's affidavit.  (Abrams Aff. ¶ 6.).

The incident involving the pictures allegedly made by Williams occurred prior to Plaintiff's filing of her first EEOC charge (the June 23, 2005 charge), and it was one of the incidents upon which such charge was based.  (Pl.'s Dep. 142:8-16; Pl.'s Dep. Ex. 18 at Ex. A.)

### C.     Alleged Comments by Jerry Culpepper in February and March 2005

### 1.     Alleged Movie Scene Comment

6.

In February 2005, Plaintiff alleges Jerry Culpepper described to her a movie scene in which a male character used the bathroom behind a bush and quoted a line by the character to Plaintiff and another employee, Barbara Martin.  (Pl.'s Dep. 192:5-193:16.)

7.

According to Plaintiff, the movie line repeated by Culpepper was, "Just shaking the bush, boss."  (Pl.'s Dep. 202:19-203:14; 207:11-22; Pl.'s Dep. Ex. 21 at Ex. A.)

8.

Culpepper related this scene to Plaintiff and Martin after Martin told Plaintiff and Culpepper a stranger had exposed himself to her the day before.  (Pl.'s Dep. 192:12-193:13.)

9.

Plaintiff has never seen the movie Culpepper was referring to, she does not know the name of the movie in which the scene appears, and she does not know why Culpepper made the comment or what he meant by it.  (Pl.'s Dep. 197:16-20; 198:1-22.)

10.

Plaintiff does not know what the movie line repeated by Culpepper means.  (Pl.'s Dep. 207:23-208:12.)

11.

Culpepper did not make any reference to Plaintiff's race or sex or Martin's race or sex when he made this comment.  (Pl.'s Dep. 198:23-199:7.)

12.

Plaintiff does not know whether Culpepper made the same comment or referenced the same movie to white or male employees.  (Pl.'s Dep. 199:11-15.)

13.

Plaintiff testified that Culpepper's story about the movie scene or the movie line, to her knowledge, did not have anything to do with her race or gender.  (Pl.'s Dep. 200:9-20; 208:13-209:3.)

14.

Plaintiff did not complain about Culpepper's comment to anyone at Big Lots.  (Pl.'s Dep. 209:21-210:5.)

15.

This incident occurred prior to Plaintiff's filing of her first EEOC charge on June 23, 2005, and it was one of the incidents on which she based her June 23 charge.  (Pl.'s Dep. 195:6-23; see also Pl.'s Dep. Ex. 18 at Ex. A.)

16.

Plaintiff also included the specific details of this incident in her second EEOC charge (the September 22, 2005 charge).  (Pl.'s Dep. 192:5-11; Pl.'s Dep. Ex. 21 at Ex. A.)

2.     **Alleged Comment Regarding Customers**

6.

Plaintiff also alleges that in March 2005, Culpepper said to Plaintiff, "These customers get on my fucking nerves."  (Pl.'s Dep. 210:9-13.)

7.

Culpepper's statement referred to customers and did not have anything to do with Plaintiff.  (Pl.'s Dep. 211:8-212:4.)

8.

Culpepper did not reference Plaintiff's race or sex when he made this comment, and his comment did not have anything to do with Plaintiff's race or sex.  (Pl.'s Dep. 212:5-8, 20-22.)

9.

Plaintiff acknowledged Culpepper did not use the word "fucking" in a sexual context when he made this statement.  (Pl.'s Dep. 213:6-10, 17-19.)

10.

Plaintiff was offended by Culpepper's use of the word "fucking" because it is a curse word that Culpepper, a manager, used in the workplace.  (Pl.'s Dep. 229:22-230:9.)

11.

Plaintiff found this statement objectionable because she did not think it was appropriate for a manager to use a curse word in the workplace "around nobody [sic]." (Pl.'s Dep. 229:22-230:9.)

### 12.

Plaintiff did not complain to anyone about this statement by Culpepper. (Pl.'s Dep. 214:6-8; 215:2-10.)

### 13.

This incident occurred prior to Plaintiff's filing of her first EEOC charge on June 23, 2005, and it was one of the incidents on which she based her June 23 charge. (Pl.'s Dep. 210:23-211:7.)

### 14.

Plaintiff included the specific details of this statement in her second EEOC charge (the September 22, 2005 charge). (Pl.'s Dep. 210:9-12; Pl.'s Dep. Ex. 21 at Ex. A.)

### D.     Alleged Comment by Billy Pridgen in July 2005

### 6.

Plaintiff testified that, on or about July 18, 2005, Billy Pridgen commented that she and another Big Lots employee, Lisa Poole, were the only employees who could wear the coconut bras on display in the store. (Pl.'s Dep. 215:11-216:21, 217:15-17.)

### 7.

The coconut bras were being sold at Big Lots along with other Hawaiian-themed and summer merchandise. (Pl.'s Dep. 217:11-14.)

8.

Plaintiff testified as Pridgen made this comment, he placed his hand on his chest to demonstrate.  (Pl.'s Dep. 216:14-21.)

9.

Plaintiff walked away after Pridgen made this comment.  (Pl.'s Dep. 216:18-21.)

10.

Plaintiff did not tell Pridgen she was offended by the comment, and she did not complain to anyone at Big Lots about the alleged comment.  (Pl.'s Dep. 221:2-10; 222:2-4.)

11.

Plaintiff does not think Pridgen's comment had anything to do with her race.  (Pl.'s Dep. 219:5-7.)

12.

Plaintiff speculates that Pridgen made the alleged comment because of her small breasts.  (Pl.'s Dep. 219:8-12.)

13.

Pridgen's alleged comment was an isolated incident.  (Pl.'s Dep. 232:21-233:10.)

14.

Plaintiff included this alleged comment by Pridgen in her second EEOC charge (the September 22, 2005 charge).  (Pl.'s Dep. 215:11-15; Pl.'s Dep. Ex. 21 at Ex. A.)

**E.     Alleged Comment by Jerry Culpepper in August 2005**

6.

Plaintiff testified that on or about August 17, 2005, Plaintiff was working with Jerry Culpepper when he asked the employees if anyone wanted a drink.  (Pl.'s Dep. 222:5-17; 223:4-7.)

7.

Plaintiff asked Culpepper for a Sprite, and he purchased one for her.  (Pl.'s Dep. 222:11-17; 223:18-19.)

8.

Plaintiff testified that she supposes Culpepper was being nice by buying her a drink. (Pl.'s Dep. 223:18-19.)

9.

After Culpepper handed Plaintiff the drink, she testified that he said to her, "I'm going to tell you like the old folks used to tell me, all I want to see now is ass and elbows."  (Pl.'s Dep. 222:11-21.)

10.

Plaintiff had heard the term "ass and elbows" before Culpepper made this statement to her, and she understood the term to mean "to get to work."  (Pl.'s Dep. 226:11-20; 227:5-12.)

11.

Plaintiff was offended by Culpepper's use of the word "ass" because it is a curse word that Culpepper, a manager, used in the workplace.  (Pl.'s Dep. 229:10-21; 230:10-231:1.)

12.

Plaintiff found this statement objectionable because she did not think it was appropriate for a manager to use a curse word in the workplace "around nobody [sic]."  (Pl.'s Dep. 230:7-9.)

13.

Plaintiff does not know what Culpepper meant by the comment or if Culpepper made the same comment to white or male employees.  (Pl.'s Dep. 227:5-228:3.)

14.

Plaintiff remembers Culpepper making this comment only on this one occasion; it was an isolated incident.  (Pl.'s Dep. 228:4-6; 233:17-20.)

15.

Plaintiff testified that the comment by Culpepper did not have anything to do with Plaintiff's race.  (Pl.'s Dep. 228:11-14.)

16.

Plaintiff does not believe Culpepper was trying to come on to her in a sexual way when he made this comment.  (Pl.'s Dep. 233:21-234:2.)

17.

Plaintiff did not tell Culpepper she was offended by his comment and did not complain to anyone at Big Lots about Culpepper's comment.  (Pl.'s Dep. 234:6-15.)

Respectfully submitted this 16th day of March, 2007.

Stephen X. Munger
Georgia Bar No. 529611
Gregory L. Smith, Jr.
Georgia Bar No. 658369
JACKSON LEWIS LLP
1900 Marquis One Tower

245 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303-1226
Telephone:    404-525-8200
Facsimile:    404-525-1173

LOCAL COUNSEL:                    /s/ Joseph T. Carpenter

Joseph T. Carpenter

Alabama Bar No. 5114C59J
CARPENTER, INGRAM & MOSHOLDER, LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, Alabama  36106
Telephone:    334-213-5600
Facsimile:    334-213-5650

ATTORNEYS FOR DEFENDANT
BIG LOTS STORES, INC.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NICOLE TAYLOR REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BIG LOTS STORES, INC., | ) | 2:06-CV-00380-MHT-CSC |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify I have served Plaintiff with the foregoing **DEFENDANT BIG LOTS STORES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS** by causing a copy to be sent via certified mail, return receipt requested, to:

Nicole Taylor Reed
1148 Barley Drive
Montgomery, AL  36111

This 16th day of March, 2007.

/s/ Joseph T. Carpenter
Joseph T. Carpenter
Alabama Bar No. 5114C59J

1