UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
NORTHERN DIVISION

| | | |
|---|---|---|
| NICOLE TAYLOR REED, | ) | 2007 MAR 22  P 3: 37 |
| | ) | |
| Plaintiff, | ) | DEBRA P. HACKETT, CLK |
| | ) | U.S. DISTRICT COURT |
| v. | ) | MIDDLE DISTRICT ALA |
| | ) | CIVIL ACTION NO. |
| BIG LOTS STORES, INC., | ) | |
| | ) | 2:06-CV-00380-MHT |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT BIG LOTS STORES, INC.'S CORRECTED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Big Lots Stores, Inc. ("Big Lots"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits its Corrected Memorandum of Law in Support of Motion for Summary Judgment.

## I.    INTRODUCTION

Plaintiff Nicole Taylor Reed ("Plaintiff"), a black female, alleges she was subjected to sexual and racial harassment, resulting in a hostile work environment, during her employment at Big Lots Store No. 818 in Montgomery, Alabama in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").  (Compl. ¶¶ 4, 6; Facts ¶¶ 1, 4-5, 47.)  During her deposition, Plaintiff clarified that she has not brought any claims of retaliation or any claims based on her termination from Big Lots in this lawsuit.  (Facts ¶ 48.)  Plaintiff's claims of sexual and racial harassment are based on alleged conduct and comments by three Big Lots employees:

Billy Pridgen, an Assistant Manager; Mike Williams, an Associate Store Manager; and Jerry Culpepper, the Store Manager.[1]  (Facts ¶¶ 6-8.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on June 23, 2005, alleging sexual and racial harassment ("June 23 EEOC charge").  The EEOC issued a right to sue notice on June 29, 2005.  Plaintiff did not file a civil action based on that charge.

Plaintiff then filed a second charge of discrimination with the EEOC on September 22, 2005, alleging sexual and racial harassment based on the identical factual allegations of her first charge, but adding two new allegations of harassment ("September 22 EEOC charge").  The EEOC issued a right to sue notice on Plaintiff's second charge on February 6, 2006.  Plaintiff then filed this action on April 26, 2006.

Big Lots is entitled to summary judgment on all of Plaintiff's claims for numerous reasons.  As an initial matter, all of the allegations in this lawsuit stemming from Plaintiff's June 23 EEOC charge are time-barred because she failed to bring suit within ninety days of receiving the right to sue notice on that charge.  Although Plaintiff also included the factual allegations in the June 23 EEOC charge in her September 22 EEOC charge, she cannot rely on the second right to sue notice to revive those untimely claims.

Moreover, even if all of Plaintiff's claims were timely, she cannot establish a prima facie case of either sexual or racial harassment.  Plaintiff identifies only five instances of alleged harassment occurring during her two years of employment at Store No. 818:  (1) Plaintiff's picture on a fake or play $100 bill created by Williams in March 2005; (2) Culpepper's comment to Plaintiff about a movie scene in February 2005; (3) Culpepper's comment to Plaintiff about

---

[1] Plaintiff has not alleged she was subjected to any tangible employment action.  Her harassment claims are therefore limited to a hostile work environment.

customers in March 2005; (4) Culpepper's "ass and elbows" comment to Plaintiff in August 2005; and (5) a comment by Pridgen to Plaintiff in July 2005 regarding coconut bras. (Facts ¶¶ 4, 13.) Plaintiff cannot show that the alleged harassment was based on her race or sex or that it was so severe and pervasive as to alter the terms and conditions of her employment. Further, Plaintiff cannot establish that Big Lots is liable for the alleged harassment. Big Lots exercises reasonable care to prevent and promptly correct harassing behavior, and Plaintiff unreasonably failed to take advantage of any corrective opportunities by complaining about any alleged harassment.

## II.    STATEMENT OF FACTS

For purposes of this Memorandum, Big Lots incorporates by reference its Statement of Undisputed Facts, filed contemporaneously. For the facts referenced in this Memorandum, Big Lots has included specific record cites in its Statement of Undisputed Facts. All cited deposition transcript pages, affidavits, and other documents are attached as exhibits to the Statement of Undisputed Facts.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.    The Summary Judgment Standard.

Summary judgment is required when "there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317 (1986), cert. denied, 484 U.S. 1066 (1988). For an issue of fact to be material, it must be outcome determinative. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986). If the non-moving party fails to make a sufficient showing as to any essential element of his case on which he has the burden of proof, the moving party is entitled to summary judgment as a matter of law. Celotex, 477 U.S. at 322-23 (emphasis added). The moving party may discharge its burden of proof merely by "showing . . . that there

3

is an absence of evidence to support the non-moving party's case." Id. If the moving party successfully articulates such absence of evidence, the burden shifts to the non-moving party to prove the existence of a material "genuine dispute." Id. This burden cannot be satisfied through mere conclusory allegations of a "genuine dispute." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

**B.      Plaintiff's Claims Set Forth in Her June 23 EEOC Charge Are Time-Barred.**

Plaintiff is barred from pursuing the claims in her Complaint set forth in her June 23 EEOC charge because she failed to file suit within ninety days of receiving her right to sue notice from the EEOC. Plaintiff initially filed a charge of discrimination against Big Lots with the EEOC on June 23, 2005, alleging sexual and racial harassment. (Facts ¶¶ 29-34.) Plaintiff testified that the June 23 EEOC charge was specifically based on the following allegedly harassing conduct: (1) Williams's creation of fake or play money with Plaintiff's picture on it in March 2005; (2) Culpepper's comment about a movie scene in February 2005; and (3) Culpepper's use of a curse word in March 2005. (Facts ¶¶ 32-34, 62, 83, 93, 102.) Plaintiff received the right to sue notice for the June 23 EEOC charge on June 29, 2005.[2] (Facts ¶¶ 35-37.)

---

[2] Plaintiff also testified that in August 2003, nearly two years before she filed her June 23, 2005 EEOC charge, Billy Pridgen made a comment to her while she was wearing a bandana. (Facts ¶ 49.) To the extent Plaintiff alleges this comment is part of her claims of racial or sexual harassment, she has failed to exhaust her administrative remedies before bringing the claim in this suit. Plaintiff testified she did not include this alleged comment in her June 23 EEOC charge because it occurred so long before she filed the charge. (Facts ¶¶ 56-58.) Because Plaintiff never filed a charge including this allegation, the Court lacks jurisdiction over that part of Plaintiff's claim. See Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) ("The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action."). This incident otherwise fails to support Plaintiff's claims of sexual and racial harassment for many reasons. (See, e.g., Facts ¶¶ 50-53.)

Section 2000e-5(f)(1) of Title VII requires a charging party to file suit on his or her Title VII claims within ninety days of receiving a right to sue notice from the EEOC.  42 U.S.C. § 2000e-5(f)(1); see also Green v. Union Foundry Co., 281 F.3d 1229, 1233 (11th Cir. 2002); Lawson v. Bruno's, Inc., No. 91-0992, 1993 U.S Dist. LEXIS 3629, at *18 (S.D. Ala. Mar. 23, 1993) ("This ninety day period has been held to be the equivalent of a statute of limitations period by the courts, and has been strictly enforced.") (attached as Ex. 1).  Plaintiff, however, did not file suit within ninety days of her receipt of the initial right to sue notice.  Instead, Plaintiff filed a second charge of discrimination with the EEOC on September 22, 2005.  (Facts ¶ 38.) Plaintiff included in this charge the same factual allegations as her June 23 EEOC charge, as well as allegations about two comments by Pridgen and Culpepper that occurred in July and August 2005, after Plaintiff filed her June 23 EEOC charge.  (Facts ¶¶ 38, 40-43, 83, 93-94, 102-103, 112.)  Plaintiff testified she filed this second charge of discrimination because the EEOC had dismissed the first charge.  (Facts ¶ 39.)  Plaintiff received a right to sue notice for the September 22 EEOC charge on February 6, 2006.  (Facts ¶¶ 44-46.)  Plaintiff filed the instant Complaint on April 26, 2006, ten months after the right to sue notice for the June 23 EEOC charge was issued.

Because Plaintiff did not file her Complaint within ninety days of her receipt of the right to sue notice for the June 23 EEOC charge, her claims in this suit based on that charge are time-barred.  Plaintiff cannot revive the claims based on the June 23 EEOC charge simply by reiterating them in the September 22 EEOC charge and obtaining a second right to sue notice.  In a case directly on point, Lo v. Pan Am. World Airways, Inc., 787 F.2d 827, 828 (2d Cir. 1986), the plaintiff failed to file a lawsuit within ninety days of receiving her right to sue notice for her first EEOC charge. The plaintiff then filed a second EEOC charge based on the same facts as the first charge and obtained a second right to sue notice.  Id.  The court of appeals affirmed the

5

district court's dismissal of the plaintiff's claims, holding that the timeliness of the plaintiff's lawsuit "must be determined with reference to only the first [right to sue notice]." Id. The court reasoned that "[o]therwise, the time limitations of [Title VII] would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional [right to sue notices] whenever they pleased." Id.; see also Dowdell v. Sunshine Biscuits, Inc., 90 F.R.D. 107, 115-16 (M.D. Ga. 1981) (holding plaintiff could not pursue claims appearing in his first charge of discrimination because he failed to file suit within ninety days of receiving the right to sue notice for the first charge).

Other courts have consistently held that a plaintiff's claims based on an initial EEOC charge are time-barred where he or she failed to bring suit within ninety days of the right to sue notice and instead filed a second EEOC charge that included the same allegations as the first charge. See, e.g., Gilmore v. Potter, No. 4:04-CV-1264, 2006 U.S. Dist. LEXIS 81991, at *1, 9-11 (E.D. Ark. Nov. 7, 2006) (holding the plaintiff was barred from asserting a claim based upon acts asserted in prior EEOC charges because the lawsuit was not filed within the ninety-day limitations period) (attached as Ex. 2); Azari v. Target Corp., No. 3:05-CV-0095, 2005 U.S. Dist. LEXIS 36205, at *1, 6-9 (N.D. Tex. Dec. 5, 2005) (granting summary judgment as to all claims alleged in the plaintiff's first EEOC charge where he failed to bring the lawsuit within the ninety-day limitations period) (attached as Ex. 3).

It is undisputed that with the exception of two alleged incidents that occurred after Plaintiff filed the June 23 EEOC charge, Plaintiff's September 22 EEOC charge is based on the exact same factual allegations as her June 23 EEOC charge.  (Facts ¶ 42.)  According to Plaintiff's testimony, the following alleged incidents were included in her June 23 EEOC charge and her September 22 EEOC charge: (1) Williams's creation of a fake or play $100 bill with her

picture on it in March 2005; (2) Culpepper's comment about a movie scene in February 2005; and (3) Culpepper's use of a curse word in March 2005. (Facts ¶¶ 32-34, 62, 83, 93, 102.) Plaintiff failed to file suit within ninety days of receiving her right to sue notice for the June 23 EEOC charge and cannot revive those claims by relying on her second right to sue notice. Lo, 781 F.2d at 828; Dowdell, 90 F.R.D. at 115-16. Accordingly, Big Lots is entitled to summary judgment on all of Plaintiff's claims based on these alleged incidents. See, e.g., Lawson, 1993 U.S Dist. LEXIS 3629, at *18. The only two incidents underlying Plaintiff's claims in this suit that were not raised in the initial June 23 EEOC charge and therefore are not time-barred on that basis are Pridgen's alleged comment about the coconut bras in July 2005 and Culpepper's alleged "ass and elbows" comment in August 2005.

### C.    Big Lots Is Otherwise Entitled to Summary Judgment on Plaintiff's Claims.

Even assuming all of Plaintiff's claims were timely, which they are not, Plaintiff cannot establish a prima facie case of either sexual harassment or racial harassment. Plaintiff alleges she was subjected to sexually and/or racially harassing conduct by three Big Lots management employees: Billy Pridgen, Mike Williams, and Jerry Culpepper. To state a prima facie case of hostile work environment based on either sexual or racial harassment by a supervisor, Plaintiff must establish (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment"; and (5) a basis for holding Big Lots liable for the alleged harassment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (citation omitted); see also Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).

Plaintiff identified only five isolated and unrelated incidents of alleged harassment as the basis of her claims in this suit: (1) Plaintiff's picture on fake or play $100 bill created by Williams in March 2005; (2) Culpepper's comment to Plaintiff about a movie scene in February 2005; (3) Culpepper's comment to Plaintiff about customers in March 2005; (4) a comment by Pridgen to Plaintiff in July 2005 about coconut bras; and (5) Culpepper's "ass and elbows" comment to Plaintiff in August 2005.[3] (Facts ¶¶ 59-83, 84-103, 104-112, 113-124.) As discussed in detail below, these alleged incidents do not establish a prima facie case of either sexual or racial harassment.

### 1. Plaintiff Cannot Show Any Alleged Harassment Was Based on Her Sex Or Race.

Even if all of Plaintiff's claims were timely, she cannot establish the third element of her harassment claims.[4] To establish a prima facie case of harassment, a plaintiff must show that any alleged harassment occurred <u>because of the plaintiff's membership in a protected class</u>. <u>See Henson v. Dundee</u>, 682 F.2d 897, 904 (11th Cir. 1982) (holding a plaintiff "must show that but for the fact of her sex, she would not have been the object of harassment"); <u>Lee v. Reinhardt Motors, Inc.</u>, No. 2:05-CV-235, 2006 U.S. Dist. LEXIS 78093, at *45 (M.D. Ala. Oct. 25, 2006) (noting that in evaluating a claim of a racial harassment, a court "'focuses only on whether the complaining employee was targeted because of his or her race'") (attached as Ex. 4). To survive a motion for summary judgment, a plaintiff must come forward with <u>evidence</u> in support of her claim that the conduct was specifically based on her membership in a protected class. <u>Id.</u> at *44-

---

[3] Plaintiff testified Pridgen made a comment in August 2003 that she believed to be harassing. (Facts ¶¶ 49, 51.) As discussed in footnote 1, above, the Court lacks jurisdiction over any claims arising from this incident because Plaintiff failed to exhaust her administrative remedies before filing suit. <u>Chanda</u>, 234 F.3d at 1225.

[4] As discussed above in § III(B), only two of the incidents underlying Plaintiff's harassment claims are not time-barred.

45 (emphasis added).  Plaintiff cannot meet this burden because she lacks any evidence whatsoever that the alleged harassment was based on her sex or race.

### a.  Plaintiff cannot show the pictures created by Williams were motivated by her sex or race.

To satisfy the third element of the prima facie case, the allegedly harassing conduct "must be of a sexual or gender-related nature—'sexual advances, requests for sexual favors, or conduct of a sexual nature.'"  Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000) (quoting Mendoza, 195 F.3d at 1245).  Similarly, in evaluating a racial harassment claim, a court "'focuses only on whether the complaining employee was targeted because of his or her race.'"  Lee, 2006 U.S. Dist. LEXIS 78093, at *45.  Plaintiff bases her claims of harassment in part on Williams's creation of a picture of her on a play or fake $100 bill.  (Facts ¶¶ 59-83.)  Plaintiff, however, testified she did not find the picture to be objectionable based on her sex or race. (Facts ¶¶ 77.)  Instead, Plaintiff testified that she found the picture objectionable because the statement "bogus cash" appeared on the bill; Plaintiff interpreted this statement as "discredit[ing]" her because it meant she was "as bogus as th[e] note."  (Facts ¶ 75-76.)  She admitted the picture of her had nothing to do with her race or sex, and there was no reference to her race or sex on the fake $100 bill.  (Facts ¶¶ 67, 70, and Facts Ex. B.)  Although Plaintiff noted that Williams created other, similar pictures of black female employees,[5] she also admitted that the majority of the employees at Store No. 818 were black and female and that Jerry Culpepper, a white male, also appeared in some of the pictures.  (Facts ¶¶ 70-73.)  Significantly, Plaintiff further testified she did not know why Williams made the pictures or whether Williams also made pictures of white or male employees.  (Facts ¶¶ 69, 73-74.)

---

[5] Plaintiff testified that she was not affected by the pictures that did not depict her.  (Facts ¶ 68.)

Plaintiff lacks <u>any</u> evidence that Williams created this picture of her because of her sex or race. Plaintiff cannot demonstrate that there was anything sexually or racially harassing about the picture created by Williams; by her own admission, the picture had nothing to do with her sex or race. (Facts ¶ 70.) Further, Plaintiff cannot show the picture by Williams was racially motivated simply because Plaintiff is African-American. <u>Lee</u>, 2006 U.S. Dist. LEXIS 78093, at *45 ("The mere fact that [a plaintiff] is African-American is insufficient to demonstrate that the conduct about which [a plaintiff] complains is racially motivated."). Any claim by Plaintiff that the picture is based on her race or sex is wholly undermined by the fact that Culpepper, a white male, also appeared in similar pictures created by Williams. (Facts ¶¶ 70-73.) Where "the conduct complained of is equally offensive" to employees inside and outside the protected class, the conduct as matter of law does not target a protected class sex because everyone is "accorded like treatment." <u>Henson</u>, 682 F.2d at 904.

### b.     <u>Plaintiff cannot show that the comments by Culpepper were motivated by her sex or race.</u>

In support of her harassment claims, Plaintiff also has identified three comments allegedly made by Culpepper. (Facts ¶¶ 84-85, 95, 116, 121.) Plaintiff testified that in March 2005, Culpepper allegedly told her about a movie scene where a male character uses the bathroom behind a bush, and repeated a line by the character to Plaintiff. (Facts ¶ 84.) According to Plaintiff, the movie line was, "Just shaking the bush, boss." (Facts ¶ 85.)

Although Plaintiff has identified this conversation with Culpepper as a basis for her claims of harassment, she testified (1) she had never seen the movie or scene Culpepper was referring to; (2) she does not know why Culpepper made the comment or what he meant by it; and (3) she does not know what the movie line repeated by Culpepper means. (Facts ¶¶ 87-88.) Plaintiff further admitted that, to her knowledge, Culpepper's reference to the movie scene and

line did not have anything to do with her sex or race. (Facts ¶ 91.) Culpepper did not make a reference to Plaintiff's sex or race when he described the movie scene and line to her, and Plaintiff does not know if Culpepper referenced the same movie scene and line with white or male employees. (Facts ¶¶ 89, 90.) Plaintiff lacks any evidence that this conversation with Culpepper constituted harassment based on her sex or race. "Innocuous statements or conduct . . . that do not relate to the [sex or race] of the actor or of the offended party . . . are not" harassment based on sex or race. Gupta, 212 F.3d at 583; Lee, 2006 U.S. Dist. LEXIS 78093, at *45.

Plaintiff also claims Culpepper made two isolated and unrelated comments to her using curse words: (1) "These customers get on my fucking nerves," in reference to customers; and (2) "all I want to see now is ass and elbows," after purchasing Plaintiff a drink. (Facts ¶¶ 95-96, 113-116.) Plaintiff admitted these comments had nothing to do with her sex or race. (Facts ¶¶ 96-97, 120, 122-123.) Culpepper did not reference her sex or race when he made these comments. (Facts ¶¶ 97, 120, 122-123.) Plaintiff admitted that Culpepper did not use the words in a sexual context on either occasion, and that she understood the statement, "all I want to see now is ass and elbows" to mean "to get to work." (Facts ¶¶ 98, 117, 120, 123.) Plaintiff testified that she was offended by the statements not because of any sexual or racial connotations, but because Culpepper, a Store Manager, used the curse words in the workplace. (Facts ¶¶ 99, 118.) Plaintiff testified that she did not think it was appropriate for a manager to use curse words in the workplace around anyone.[6] (Facts ¶¶ 100, 119.) However, the courts have underscored that the use of objectionable language in the workplace does not constitute harassment based on sex or race. See Lee, 2006 U.S. Dist. LEXIS 78093, *37-38 ("'Workers, like other people, often are

---

[6] Plaintiff's testimony demonstrates her belief that the conduct was offensive regardless of a person's sex or race. Henson, 682 F.2d at 904.

11

foul-mouthed and . . . employers are not under a legal duty enforceable by suits under Title VII to purify the language of the workplace.'").

        **c.**    **Plaintiff cannot show the comment by Pridgen was motivated by her race.**

Plaintiff also identifies a single alleged comment by Pridgen as a basis for her claims of harassment. (Facts ¶ 104, 111.) Specifically, Plaintiff testified that Pridgen commented she and another Big Lots employee were the only employees who could wear the coconut bras that were displayed in the store. (Facts ¶ 105-106.) Plaintiff admitted the comment had nothing to do with her race.[7] (Facts ¶ 109-110.)

In sum, Plaintiff cannot satisfy the third essential element of her claim by establishing that the alleged harassment was based on her sex or race. Because she cannot do so, Big Lots is entitled to summary judgment on her claims. Henson, 682 F.2d at 904; Lee, 2006 U.S. Dist. LEXIS 78093, at *45.

        **2.**    **Plaintiff Cannot Show She Was Subjected to Severe And Pervasive Sexual Or Racial Harassment.**

Moreover, Plaintiff cannot establish she was subjected to severe and pervasive harassment as required under the fourth element of her prima facie case. For an employer's conduct to constitute actionable harassment, the conduct must be "so objectively offensive as to alter the 'conditions' of the [individual's] employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). Title VII addresses only those situations where a plaintiff's work environment is "permeated with discriminatory intimidation, ridicule, and insult." Harris v.

---

[7] Plaintiff merely speculated Pridgen made the comment because of her small breasts. (Facts ¶ 109-110.) Plaintiff's personal belief and speculation that this comment was made because of her sex is insufficient to defeat a motion for summary judgment. See, e.g., Bevill v. UAB Walker College, 62 F. Supp. 2d 1259, 1268 (N.D. Ala. 1999) (explaining "[b]are speculation based on loose construal of the evidence will not satisfy the non-movant's burden" at summary judgment).

Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (emphasis added). In assessing whether conduct is sufficiently severe and pervasive, courts must examine the "totality of the circumstances" based upon four factors: (1) the frequency of conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening; and (4) whether the conduct unreasonably interferes with the employee's job performance. Mendoza, 195 F.3d at 1246. These factors "delineate a minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination in violation of Title VII." Id. at 1246. "A plaintiff must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive." Gupta, 212 F.3d at 583.

The Eleventh Circuit has stringently applied the "severe and pervasive" requirement. For example, in the sexual harassment context, the Eleventh Circuit held the following conduct did not constitute actionable sexual harassment: (1) one instance where a supervisor stated to the plaintiff, "I'm getting fired up"; (2) an occasion where a supervisor rubbed his hip against the plaintiff's, while touching her shoulder and smiling; (3) multiple instances when a supervisor made sniffing noises while looking at the plaintiff's groin area; and (4) a supervisor's constant following and staring at the plaintiff. Mendoza, 195 F.3d at 1247; see also Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (holding supervisor who repeatedly inquired about the plaintiff's personal life, stated how beautiful the plaintiff was, asked the plaintiff out on dates, called her a dumb blonde, put his hand on her shoulder several times, placed "I love you" signs in her work area, and tried to kiss the plaintiff twice at work and once at a bar did not create an actionable hostile work environment). Similarly, the Eleventh Circuit has held the following conduct did not meet the required minimum threshold in the racial harassment context: (1) displaying of the Confederate flag in working areas; (2) displaying the

13

letters "KKK" on a bathroom wall; (3) placing a noose in an employee's locker; (4) supervisors calling the plaintiff "nigger" and "boy"; (5) a supervisor threatening to kick the plaintiff's "black ass"; and (6) a supervisor threatening to "cut" the plaintiff if he "looked at 'that white girl.'" Barrow v. Ga. Pac. Corp., 144 Fed. Appx. 54, 57 (11th Cir. 2005) (attached as Ex. 5); see also Smith v. Beverly Health & Rehab. Servs., Inc., 978 F. Supp. 1116, 1121-22 (N.D. Ga. 1997) (holding multiple racially derogatory comments by supervisor were insufficient to establish severe or pervasive harassment).

In light of the well-established case law, the conduct alleged by Plaintiff does not satisfy the severe and pervasive requirement as a matter of law.  As discussed above in § III(B), the only alleged incidents of harassment that were not raised in Plaintiff's initial June 23 EEOC charge and are therefore not time-barred are:  (1) Pridgen's alleged coconut bra comment in July 2005; and (2) Culpepper's alleged "ass and elbows" comment in August 2005.  These two alleged incidents fall far short of the standard for severe and pervasive harassment.  Further, even if the other three incidents alleged by Plaintiff were timely and proper bases for Plaintiff's claims, they also are insufficient as a matter of law.  (Facts ¶¶ 59-83, 84-103.)  These isolated, unrelated incidents are not frequent, severe, or physically threatening.

First, the conduct of which Plaintiff complains cannot be considered frequent.  Because most of the incidents upon which Plaintiff's harassment claims are based are time-barred, Plaintiff's harassment claims are limited to only two instances of alleged harassment occurring in a two-month period. (Facts ¶¶ 104-112, 113-124.)  Even if all five incidents alleged by Plaintiff are considered, the conduct cannot be viewed as frequent because the incidents occurred over the course of seven months.  (Facts ¶¶ 32-34, 62, 83, 93, 102, 104-112, 113-124.)  Cf. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding summary judgment improper

on sexual harassment claim where the harassing conduct occurred "at least 18 times during . . . 2 to 2 1/2 weeks" and the plaintiff's term of employment last only five weeks); and Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (holding harassing behavior was frequent where the plaintiff demonstrated fifteen separate instances of harassment over a four-month period).

Second, the alleged conduct identified by Plaintiff was not severe. Excluding the time-barred incidents, the only remaining incidents of alleged harassment consist of the alleged coconut bra comment by Pridgen and the alleged "ass and elbows" comment by Culpepper.[8] (Facts ¶¶ 104-112, 113-124.) Plaintiff does not allege she was subjected to any physical touching, and the alleged comments by Pridgen and Culpepper did not consist of sexual advances or racially derogatory remarks. Rather, the comments described by Plaintiff constitute the "offhand comments" that "will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 807; see also Gupta, 212 F.3d at 585 ("What one employee might perceive as conduct that crosses the proverbial line, another might perceive as banter."). Further, Plaintiff's perception that Pridgen was commenting on her breast size does not constitute severe conduct establishing a hostile work environment. See Scelta v. Delicatessen Support Services, Inc., 146 F. Supp. 2d 1255 (M.D. Fla. 2001) (concluding the

---

[8] Even if the Court were to consider the other, time-barred incidents of alleged harassment, those incidents were not sufficiently severe to establish a hostile work environment. The time-barred incidents consist of two alleged comments by Culpepper about a movie scene and about customers, and a single picture of Plaintiff created by Williams. (Facts ¶¶ 32-34, 62, 83, 93, 102.) Culpepper's comments about the movie scene and the customers are similarly "offhand comments" that did not alter the terms and conditions of Plaintiff's employment. Faragher, 524 U.S. at 807. The picture of Plaintiff, lacking any discriminatory connotations, also did not constitute sufficiently severe conduct to establish a hostile work environment. (Facts ¶ 70.) See, e.g., Lee, 2006 U.S. Dist. LEXIS 78093, at *10 n.11, 39 (concluding the plaintiff did not establish a racially hostile work environment where the plaintiff alleged, among other conduct, a supervisor drew a picture depicting a Ku Klux Klan member and stated, "this is the last thing a black man seen when he was falling down the well").

plaintiff's evidence that her supervisor, among other conduct, commented on the size of her breasts, commented that she had "luscious knockers," and stated the total weight of the plaintiff's breasts exceeded his wife's body weight was "frivolous" and insufficient to establish a hostile work environment).

Third, none of the alleged harassment described by Plaintiff was physically threatening. Indeed, none of the alleged harassment involved <u>any</u> physical touching or contact. Finally, the alleged conduct did not alter Plaintiff's terms and conditions of employment. Plaintiff testified that, throughout her employment, she was able to perform her job duties well. (Facts ¶ 9-12.) <u>Cartwright v. Talaca, Inc.</u>, No. 99-W-663, 2000 U.S. Dist. LEXIS 20500, at *19 (M.D. Ala. Nov. 1, 2000) (finding conduct complained of by the plaintiff did not alter her terms and conditions of employment where the plaintiff testified she continued to work as usual, she worked almost every day, and she did a good job) (attached as Ex. 6).

In sum, the incidents alleged by Plaintiff fall far short of the severe and pervasive threshold. <u>See, e.g.</u>, <u>Barrow v. Ga. Pac. Corp.</u>, 144 Fed. Appx. at 57; <u>Mendoza</u>, 195 F.3d at 1247; <u>Weiss</u>, 990 F.2d at 337; <u>Smith</u>, 978 F. Supp. at 1121-22. Plaintiff cannot demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." <u>Harris</u>, 510 U.S. at 21. Because the conduct alleged by Plaintiff was neither severe nor pervasive, Plaintiff cannot establish she was subject to actionable harassment as a matter of law, and Big Lots is entitled to summary judgment on Plaintiff's claims. <u>Mendoza</u>, 195 F.3d at 1249, 1251-52.

### 3.  <u>Big Lots Is Not Liable for The Alleged Harassment.</u>

Lastly, even if Plaintiff were able to establish she was subject to a sexually and racially hostile work environment, she cannot establish a basis for Big Lots' liability because Big Lots

16

satisfies the affirmative defense set forth in Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998). An employer may avoid vicarious liability for an actionable hostile environment created by a supervisor if two requirements are met: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities or to avoid harm otherwise." Faragher, 524 U.S. at 807.

An employer can generally satisfy the first prong of the affirmative defense by "promulgating a comprehensive anti-harassment policy." See, e.g., Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1297 (11th Cir. 2000). In determining whether an employer's anti-harassment policy is sufficiently reasonable, courts examine whether the employer made the policy known to employees, vigorously enforced it, and included alternate avenues of redress. Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997).

At all times during Plaintiff's employment, Big Lots had in place an anti-harassment policy that met these requirements. (Facts ¶¶ 15-16.) Big Lots maintained a Harassment-Free Environment policy and distributed such policy to all employees in the Associate Handbook. (Facts ¶¶ 15-16.) Plaintiff testified she received a copy of the handbook shortly after her hire and signed an acknowledgment affirming that she had received the handbook. (Facts ¶ 14.) Plaintiff also testified that she was familiar with the Harassment-Free Environment policy. (Facts ¶¶ 15-16, 20, 22.)

Big Lots' Harassment-Free Environment policy "strictly prohibits harassment and/or discrimination based on race, color, [or] . . . sex . . . ." (Facts ¶¶ 16, 20.) The policy states: "Any associate who believes he/she has been the subject of harassment is responsible for promptly

reporting the alleged act to Human Resources or his/her immediate supervisor." (Facts ¶¶ 16, 21.)[9] The Harassment-Free Environment policy also prohibits retaliation against employees who make complaints. (Facts ¶ 16.)

Big Lots satisfies the first prong of the affirmative defense. It is undisputed that the Harassment-Free Environment policy prohibits all forms of harassment, provides alternate avenues for employees to report such conduct, and was disseminated to employees, including Plaintiff, through the Associate Handbook. See Farley, 115 F.3d at 1553 (holding policy that expressly prohibited sexual harassment, provided multiple avenues to report harassment, and was disseminated and communicated to staff was reasonable).

An employer can satisfy the second prong of the affirmative defense by showing the employee failed to follow the employer's complaint procedures. Madray, 208 F.3d at 1302. By her own admissions, Plaintiff did not report any of the alleged harassment upon which her Complaint is based, despite her awareness of Big Lots' policies and procedures on reporting harassment and her degree in human resource management. (Facts ¶¶ 3, 19-20, 22, 26, 78, 92, 101, 108, 124.) By failing to complain, Plaintiff unreasonably failed to take advantage of the

---

[9] In addition to the Harassment-Free Environment policy, the Associate Handbook contains other policies specifically aimed at prohibiting discrimination and addressing employee complaints. (Facts ¶¶ 15-16, 17-19, 23-25, 27-28.) Big Lots' Equal Employment Opportunity policy prohibits discrimination based upon, among other things, race, color, and sex, and directs employees to report any formal or informal allegation of discriminatory conduct to Human Resources. (Facts ¶¶ 16-19.) Big Lots' Open Door policy encourages any employee with a question or problem to use the Open Door policy to contact anyone in the organization. (Facts ¶¶ 16, 23-24.) The Open Door policy also provides that employees may make anonymous complaints by calling the Get Real Hotline, which is a toll-free complaint number. (Facts ¶¶ 16, 25.) The Associate Handbook also contains a Standards of Conduct policy, which specifically states that violations of company policy, including the Harassment-Free Environment policy, will not be tolerated. (Facts ¶¶ 16, 27-28.) Plaintiff stated she was aware of and understood all of these policies. (Facts ¶¶ 17, 19-20, 22, 26.) Plaintiff received training on Big Lots' Get Real Hotline, understood the Harassment-Free Environment policy, including its complaint procedure, and understood she could bring complaints of discrimination or harassment to Human Resources. (Facts ¶¶ 19-20, 22, 26.)

corrective measures put into place by Big Lots.  <u>Faragher</u>, 524 U.S. at 807.  Big Lots has

accordingly established its affirmative defense and cannot be held liable for Plaintiff's claims of

harassment as a matter of law.  <u>Id.</u>  Summary judgment on all of Plaintiff's claims is appropriate.

## IV.    CONCLUSION

In sum, Big Lots is entitled to summary judgment on all of Plaintiff's claims for

numerous reasons.  Plaintiff's claims are based largely on incidents that are time-barred because

she failed to bring a timely lawsuit after receiving the right to sue notice on her initial EEOC

charge.  Moreover, even if Plaintiff's claims were timely filed, she cannot establish a prima facie

case of sexual or racial harassment, and Big Lots is entitled to the <u>Faragher</u>/<u>Ellerth</u> affirmative

defense on liability.  For these reasons, Big Lots is entitled to summary judgment on all of

Plaintiff's claims.

Respectfully submitted this 21st day of March, 2007.

_____

Stephen X. Munger
Georgia Bar No. 529611
Gregory L. Smith, Jr.
Georgia Bar No. 658369
JACKSON LEWIS LLP
1900 Marquis One Tower
245 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303-1226
Telephone:    404-525-8200
Facsimile:    404-525-1173


LOCAL COUNSEL:                    Joseph T. Carpenter
                                 Alabama Bar No. 5114C59J
                                 CARPENTER, INGRAM & MOSHOLDER, LLP
                                 303 Sterling Centre
                                 4121 Carmichael Road
                                 Montgomery, Alabama 36106
                                 Telephone:    334-213-5600
                                 Facsimile:    334-213-5650

                                 ATTORNEYS FOR DEFENDANT
                                 BIG LOTS STORES, INC.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NICOLE TAYLOR REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BIG LOTS STORES, INC., | ) | 2:06-CV-00380-MHT |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I hereby certify I have served Plaintiff with the foregoing **DEFENDANT BIG LOTS STORES, INC.'S CORRECTED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** by causing a copy to be sent via certified mail, return receipt requested, to:

Nicole Taylor Reed
1148 Barley Drive
Montgomery, AL  36111

This 21st day of March, 2007.

Gregory L. Smith, Jr.
Georgia Bar No. 658369