# EXHIBIT A

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 1

IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


NICOLE TAYLOR REED,

        Plaintiff,

vs.                CIVIL ACTION NO.

                   2:06-CV-00380-MHT-CSC

BIG LOTS STORES, INC.,

        Defendant.


        *    *    *    *    *


    DEPOSITION OF NICOLE TAYLOR REED,

taken pursuant to notice and stipulation

on behalf of the Defendant, in the offices

of Carpenter, Ingram & Mosholder, 4121

Carmichael Road, Suite 303, Montgomery,

Alabama, before Nicole Paulk, Court

Reporter and Notary Public in and for the

State of Alabama at Large, on January 17,

2007, commencing at 9:32 a.m.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 21

1  Q.    Where was that?  Where did you attend high
2        school?
3  A.    Lanier High School.
4  Q.    In Montgomery?
5  A.    Uh-huh.  Because that was a nice violent
6        fight.  And -- I'm trying to think.  I
7        have a bad memory.
8  Q.    I'm sorry, what did you just say?
9  A.    I said my memory, I have --
10 Q.    You have a poor memory?
11 A.    Uh-huh, very.
12 Q.    So is it hard for you to remember things
13       that occurred years ago?
14 A.    Very.  That's just being honest.  High
15       school.  Okay.  And then coming up to the
16       day about -- what -- have I been arrested?
17       Okay.  And then coming up to the -- what
18       -- when was that, though?  Okay.  See, I
19       had got into some trouble about -- I had
20       some detectives come to my house a while
21       back, some years ago, concerning like Home
22       Depot or something, saying that I was into
23       something with some people there.  Went

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 42

1    Q.    Do you recall the address for McGehee Park
2          Apartments in 2002?
3    A.    Sir, if I recalled the actual address of
4          the thing, I would have put it on there.
5          I don't -- I honestly don't recall it, the
6          number.
7    Q.    And do you recall the dates any more
8          specifically than you have listed in
9          response to Interrogatory Number 1?
10   A.    No.  I mean -- no, I don't recall the
11         dates any more specific.  I know that year
12         I stayed in that apartment.  And I ain't
13         never stayed in an apartment no longer
14         than a year, lease time, or six months.
15         And only one I had six months is when I
16         moved from McGehee Place and I went back
17         home with mama from mid-'05 to '06.  I
18         don't know.  They're correct, though.
19   Q.    For the record, what is your race?
20   A.    Black.
21   Q.    And for the record, you're female?
22   A.    Yes.
23   Q.    Are you currently married?

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 49

1      answer the question, you're saying I'm

2      refusing to cooperate?  I don't -- I

3      honestly don't see that that's refusing to

4      cooperate.

5   Q.  That's just your opinion; is that correct?

6   A.  Yeah.  Yes, that's correct.

7   Q.  And what post-high school education have

8      you had?

9   A.  Went to college, Troy State University of

10      Montgomery.

11   Q.  And when did you attend college at Troy

12      State University of Montgomery?

13   A.  From 2000 to -- when I graduated from high

14      school in 2000 until present time.  I sat

15      out two years, from 2004 until now, until

16      January of this year.

17   Q.  Tell me more specifically, have you earned

18      any degrees from Troy State University of

19      Montgomery?

20   A.  I earned two.  I have an associate's

21      degree in general science and education,

22      and I have a BS degree in human resource

23      management.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 110

1        about a 15-minute break.  Ms. Reed, you
2        were hired by Big Lots on December 13,
3        2003; is that correct?
4    A.  Correct.
5    Q.  And that's --
6    A.  2003, you say?
7    Q.  Uh-huh.
8    A.  2002 I thought.  2002?
9    Q.  Okay.  And you were hired as a part-time
10       cashier; is that right?
11   A.  Part-time cashier, correct.
12   Q.  And you were hired to work in Big Lots
13       Store Number 818 in Montgomery, Alabama;
14       is that correct?
15   A.  Correct.
16   Q.  And you worked at Store Number 818
17       throughout your employment with Big Lots;
18       is that true?
19   A.  Correct.
20   Q.  With whom did you interview when you
21       applied with Big Lots; do you recall?
22   A.  James -- I forgot his last name.  James.
23       I forgot his last name.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 111

1   Q.    Do you know who was involved in the

2         decision to hire you?

3   A.    No.

4   Q.    And when you were hired, like all

5         employees, you received an associate

6         handbook; is that true?

7   A.    I don't recall receiving a handbook.

8   Q.    You don't recall whether you received one?

9   A.    Uh-huh.

10  Q.    Do you recall signing a piece of paper

11        acknowledging that you received an

12        associate handbook and had reviewed the

13        contents?

14  A.    Not -- you're talking at the time that I

15        got hired?

16  Q.    When you started working there.

17  A.    Probably later on in the -- as I worked, I

18        probably did, but not as I got hired, not

19        the first day or anything like that.  I

20        probably did later on --

21  Q.    Maybe not the first day, but you recall

22        signing an acknowledgement form that you

23        received an employee handbook?

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 112

1   A.    Right.

2   Q.    And you recall receiving an associate

3         handbook?

4   A.    Right.  Correct.

5   Q.    If not the first day, then shortly

6         thereafter?

7   A.    Or -- yeah.

8   Q.    Ms. Reed, I've just handed you a copy of

9         Big Lots' equal opportunity policy, which

10        is contained in the associate handbook; is

11        that correct?

12                    (The referred-to document was

13                     marked for identification as

14                     Defendant's Exhibit No. 6.)

15  A.    I'm not sure if it's in the handbook or

16        not, but you handed me a form saying equal

17        opportunity employment.

18  Q.    You recognize this as Big Lots' equal

19        employment opportunity policy?

20  A.    Yeah, but I'm not sure if this page is in

21        the handbook.

22  Q.    But you recognize this policy as Big Lots'

23        equal employment opportunity policy, is

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 113

1      what I'm asking you.

2   A.   Oh, I've never seen the equal opportunity

3        employment policy.

4   Q.   Did you read the handbook?

5   A.   They brought us in one day soon -- well,

6        towards the end and everything, they

7        brought us in, in order to bring the --

8        the handbooks, to read them.  Told us come

9        to work one hour early just to read the

10       handbook and sign the paper.  But what I'm

11       saying is I don't know if this exact one

12       came out the handbook.  I don't know.

13  Q.   Okay.  Do you recall when you came in to

14       -- had it been revised?  Is that when you

15       came in --

16  A.   Yeah.

17  Q.   -- to read another copy and sign a new

18       acknowledgement form?

19  A.   That's what -- yeah, that's what we did.

20  Q.   All right.  So at some point you recall --

21       some point after you received an associate

22       handbook and signed for it, at some other

23       point it was revised, and so they asked

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 114

1          you to come in early and receive a new

2          version of the associate handbook and sign

3          for that version too?  Is that what you

4          were just talking about?

5    A.    Yes.

6    Q.    So you knew there was an equal opportunity

7          employment policy at Big Lots?

8    A.    Yeah.

9    Q.    And you were aware that the policy states

10         that no person shall be discriminated

11         against in employment because of, among

12         other things, race, color, and sex,

13         correct?

14   A.    Correct.

15   Q.    And you were aware during your employment

16         that Big Lots' policy prohibits

17         discrimination upon, among other things,

18         race, color, and sex, correct?

19   A.    Correct.

20   Q.    And you were aware during your employment

21         that Big Lots' policy stated that any

22         formal or informal allegation that the

23         equal employment opportunity had been

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 115

1         violated should be referred immediately to

2         human resources; is that correct?

3    A.   I'm not -- I don't know about that.

4    Q.   You don't recall?

5    A.   I don't recall.

6    Q.   But you were aware that complaints could

7         be directed to human resources, correct?

8    A.   I mean, that's for any company.  Yeah, I'm

9         aware of that.

10   Q.   But at Big Lots you understood that the

11        policy was that human resources was one

12        place to raise complaints?

13   A.   Yes.

14   Q.   I've just handed you, Ms. Reed, what has

15        been marked as Exhibit 7, which is a copy

16        of the harassment-free environment policy,

17        which is also contained in Big Lots'

18        associate handbook; is that correct?

19                    (The referred-to document was

20                     marked for identification as

21                     Defendant's Exhibit No. 7.)

22   A.   It's the policy, but I'm not sure if it's

23        in the -- I don't recall it being in the

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 117

1    A.    I don't recall.

2    Q.    You don't recall whether you did or not?

3    A.    Yeah, I don't recall.

4    Q.    But you knew that Big Lots prohibited

5          harassment and/or discrimination based on

6          race and color and sex and so forth,

7          didn't you?

8    A.    Ask me that question again.

9    Q.    You're aware that Big Lots had a policy in

10         place that prohibited harassment and

11         discrimination based on race and color and

12         gender and such things?

13   A.    Yes.

14   Q.    And if you'll look with me, I'm down to

15         the paragraph that begins "likewise."  Do

16         you see that?

17   A.    Uh-huh.

18   Q.    It states that, quote, any associate who

19         believes he/she has been the subject of

20         harassment is responsible for promptly

21         reporting the alleged act to human

22         resources or his/her immediate supervisor.

23         Is that correct?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 118

1    A.    That's what the statement says, yes.

2    Q.    And you knew during your employment that

3          such complaints should be made to a

4          supervisor or the human resources

5          department, correct?

6    A.    How can you go to the people who are doing

7          this to you?

8    Q.    That's not what my question was.

9    A.    So what's the question?

10   Q.    Do you need me to repeat the question?

11   A.    Please.

12   Q.    The question was, you knew that under Big

13         Lots' policy such complaints could be

14         raised with an immediate supervisor or a

15         supervisor or human resources?

16   A.    Okay.

17   Q.    Is that right?

18   A.    Yes.

19   Q.    And I've just handed you a copy of Exhibit

20         8, which is a copy of Big Lots' open door

21         policy; is that correct?

22                   (The referred-to document was

23                   marked for identification as

bda54263-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 119

1                      Defendant's Exhibit No. 8.)

2    A.    That's what you -- that's what I've

3          received.

4    Q.    And do you recall this policy from the

5          associate handbook?

6    A.    No, I don't.

7    Q.    You don't recall whether it was in there

8          or not?

9    A.    Yeah, I don't recall if it was in there or

10         not.

11   Q.    Is that because of the length of time that

12         it's been since you worked at Big Lots?

13   A.    I'm almost sure that's what it is.

14   Q.    It's hard for you to remember what the

15         policies were or what you knew about them

16         because it's been a while since you worked

17         at Big Lots?

18   A.    Correct.

19   Q.    But if I told you that this open door

20         policy was in the associate handbooks

21         during your employment, you don't have any

22         reason to disagree, do you?

23   A.    No.

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 122

1   A.   Only thing, I just -- I couldn't recall

2        that, like actually put it like, oh, yeah,

3        I remember; I couldn't say that.  But I

4        wouldn't dispute saying that it wasn't

5        there.

6   Q.   It's possible it was in there and you just

7        don't recall?

8   A.   Correct.

9   Q.   And was it also possible you saw this

10       policy in other forms other than the

11       associate handbook but you just don't

12       recall?

13  A.   It's possible.

14  Q.   Is it possible that you received training

15       on the Get Real Hotline?

16  A.   I know I did that.

17  Q.   You did receive training on it?

18  A.   I know I -- I know we've done that.

19  Q.   And then that last paragraph states that

20       any attempt to thwart or retaliate against

21       an associate for exercising his or her

22       open door rights will be considered a

23       serious violation of company policy and

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 123

1           may result in disciplinary action up to

2           and including termination of employment.

3           Is that correct?

4     A.    That's what it states.

5     Q.    I've just handed you a document that's

6           been marked as Exhibit 9, Ms. Reed.  And

7           this is a copy of Big Lots standards of

8           conduct policy; is that right?

9                         (The referred-to document was

10                         marked for identification as

11                         Defendant's Exhibit No. 9.)

12    A.    That's what it states.

13    Q.    And the first page states that violations

14          of company policy, including the

15          harassment-free policy, will not be

16          tolerated; is that correct?

17    A.    That's what it states.

18    Q.    And the second page, last paragraph,

19          states, quote, associates are expected to

20          comply with this policy and report

21          violations immediately, end quote.  Is

22          that correct?

23    A.    That's what it states.

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 125

1    A.    Started.  Yeah, that sounds about right.

2    Q.    You have no reason to disagree with that

3          amount?

4    A.    No.

5    Q.    Ms. Reed, do you recognize this document?

6                    (The referred-to document was

7                     marked for identification as

8                     Defendant's Exhibit No. 10.)

9    Q.    It indicates that you received a pay

10         increase to $6.05 in June 2003, correct?

11   A.    Correct.

12   Q.    And the document is signed by you and

13         Billy Pridgen?

14   A.    Correct.

15   Q.    And Mr. Pridgen was an assistant manager

16         at Store Number 818; isn't that correct?

17   A.    Correct.

18   Q.    Do you know whether Mr. Pridgen made the

19         decision to give you the pay increase?

20   A.    Repeat it.

21   Q.    Do you know whether Mr. Pridgen made the

22         decision to give you this pay increase?

23   A.    I don't know.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 128

1    cashier position to a store associate

2    position, do you know who made that

3    decision?

4    A.    No.

5    Q.    I've just handed you Exhibit 12, which is

6          another action request form from Big Lots.

7          Do you recognize this document?

8                    (The referred-to document was

9                    marked for identification as

10                   Defendant's Exhibit No. 12.)

11   A.    Yes.

12   Q.    It indicates you received another pay

13         increase to $6.70 in December 2004,

14         correct?

15   A.    Correct.

16   Q.    And this document is signed by you and

17         Jerry Culpepper, correct?

18   A.    Correct.

19   Q.    Do you know who made the decision to give

20         you the pay increase?

21   A.    No.

22   Q.    Was Jerry Culpepper the store manager for

23         Store Number 818 at that time?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 129

1    A.    Correct.

2    Q.    I've just handed you a performance

3          appraisal marked as Exhibit 13.  Do you

4          recognize this exhibit?

5                    (The referred-to document was

6                     marked for identification as

7                     Defendant's Exhibit No. 13.)

8    A.    Yes.

9    Q.    And this is, again, a performance

10         appraisal, and it's for you, and it's

11         signed June 29, 2003 by you, Billy

12         Pridgen, and E. Torbert; is that correct?

13   A.    Correct.

14   Q.    And the first page indicates that Billy

15         Pridgen completed the appraisal.  Is that

16         your understanding?

17   A.    Yes.

18   Q.    And your overall rating was 11 points,

19         which is noted as outstanding; is that

20         correct?

21   A.    Correct.

22   Q.    And you were pleased with this evaluation;

23         is that true?

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 134

1    Q.    And isn't it true that Billy Pridgen and

2          Jerry Culpepper gave you only positive

3          evaluations?

4    A.    Correct.

5    Q.    Do you recall ever receiving a verbal or

6          written discipline or reprimand during

7          your employment at Big Lots?

8    A.    No.

9    Q.    So you were never reprimanded or

10         disciplined while you worked there; isn't

11         that true?

12   A.    True.   Correct.

13   Q.    And you were never demoted or punished in

14         any way while you worked at Big Lots, were

15         you?

16   A.    No.

17   Q.    Throughout your employment at Big Lots,

18         did you perform your job duties well?

19   A.    Yes.

20   Q.    And you were always able to perform your

21         job duties well at Big Lots?

22   A.    Not always.

23   Q.    But you always did perform them well?

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 136

1    performance and proud of your work?

2    A.    My work, yes.

3    Q.    And throughout your employment at Big

4          Lots, you always performed all of the

5          duties and responsibilities that were

6          asked of you?

7    A.    Yes.

8    Q.    And when you performed your duties and job

9          responsibilities, you performed them well?

10   A.    Correct.

11   Q.    And you're not basing any claims in this

12         lawsuit on any issues concerning your

13         evaluations, are you?

14   A.    No.

15   Q.    All right.  In this lawsuit, you allege

16         you were subjected to a hostile work

17         environment because of your race and sex,

18         correct?

19   A.    Correct.

20   Q.    And those are the only claims you're

21         bringing in this lawsuit, correct?

22   A.    Correct.

23   Q.    And you're bringing your claims under

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 137

1          Title 7 of the Civil Rights Act; is that

2          correct?

3     A.   Correct.

4     Q.   Ms. Reed, I've just handed you what's been

5          marked as Exhibit 17.  Do you recognize

6          this document?

7                    (The referred-to document was

8                     marked for identification as

9                     Defendant's Exhibit No. 17.)

10    A.   Yes.

11    Q.   And is this a copy of the complaint you

12         filed in this matter?

13    A.   Yes.

14    Q.   Who prepared this document?

15    A.   A guy named Attorney Gary Atchison.

16    Q.   Did he prepare this shortly before it was

17         filed?

18    A.   He -- yeah.  This -- yeah.  Yes.

19    Q.   But he's not representing you in this

20         lawsuit, is he?

21    A.   Correct.  He dropped us at the last

22         minute.

23    Q.   Tell me what you mean.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 139

1    Q.    Ms. Reed, we're back on the record after

2          our lunch break.  You understand that

3          you're still under oath; is that correct?

4    A.    Correct.

5    Q.    Ms. Reed, I've just handed you a document

6          that's been marked as Exhibit 18.  Do you

7          recognize this document?

8                    (The referred-to document was

9                     marked for identification as

10                    Defendant's Exhibit No. 18.)

11   A.    Yes, I do.

12   Q.    Is this a copy of your charge of

13         discrimination you filed against Big Lots

14         with the EEOC on June 23rd, 2005?

15   A.    Correct.

16   Q.    And this is Charge Number 130-2005-05212?

17   A.    Correct.

18   Q.    And you filed a copy of this document as

19         an exhibit to your complaint; is that

20         correct?

21   A.    Correct.

22   Q.    Did you review this EEOC charge before it

23         was filed?

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 140

1     A.     Yes.

2     Q.     And is that your signature at the bottom

3            of the page?

4     A.     Yes.

5     Q.     And you signed the document on June 16,

6            2005?

7     A.     Yes.

8     Q.     And you understood this was sworn

9            testimony?

10    A.     Yes.

11    Q.     And is everything in the charge truthful

12           and accurate?

13    A.     Yes.

14    Q.     And you've included the relevant facts?

15    A.     Yes.

16    Q.     And in the box on the charge indicating

17           the date the alleged discrimination took

18           place, you've noted March 28 through 30,

19           2005; is that correct?

20    A.     Yes.

21    Q.     And those are the dates you allege the

22           discrimination took place?

23    A.     For the situation on the pictures, but

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 142

1    Q.    Did you draft this Exhibit A?

2    A.    No, I did not.

3    Q.    Who did?

4    A.    Gary -- Attorney Gary Atchison.

5    Q.    And he represented you at the time this

6          charge was filed; is that correct?

7    A.    Correct.

8    Q.    Now, is the information contained in

9          Exhibit A complete and accurate with

10         respect to the specific facts underlying

11         this EEOC charge?

12   A.    Correct.

13   Q.    And did you file this charge because you

14         were complaining about the pictures Mike

15         Williams made?

16   A.    Correct.

17   Q.    And was Mike Williams an associate manager

18         at Big Lots Store Number 818 where you

19         worked?

20   A.    Yes, he was.

21   Q.    And is his full name Gerald Michael

22         Williams?

23   A.    Yes.

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 143

1    Q.    When I refer to Mike Williams, you'll
2          understand who I'm referring to?
3    A.    Correct.
4    Q.    Do you know the age under Alabama law that
5          an individual is considered, under the
6          eyes of the law, an adult, as opposed to a
7          minor?
8    A.    No.
9    Q.    So you don't know the legal age of
10         majority in --
11   A.    Oh, 21?  Is it 21?
12   Q.    I'm asking what you think it is.
13   A.    I think it's 21.  22.
14   Q.    Do you know?
15   A.    I don't know.
16   Q.    Do you know whether it's 18?
17   A.    No.
18   Q.    You don't know?
19   A.    Huh-uh.
20   Q.    And back to your allegations with respect
21         to Mike Williams, what specifically did he
22         do?
23   A.    He went around in the store and he took

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 144

1         pictures of us, supposedly to make us name

2         badges, kind of like the warehouse name

3         badges or ID cards.  And the next day,

4         what he came back with was a photo -- was

5         the photograph with our pictures on the

6         money and the other ladies on the faces --

7         their black bodies on the white faces --

8         their black faces on the white bodies and

9         stuff.  But if you had a color copy, you

10        could actually see that, that the skin on

11        the women and stuff is white.

12   Q.   Do you have color copies?

13   A.   Yeah.  It's in the car.  I left it in my

14        little thing.  It's in the car.

15   Q.   All right.  But you have not produced

16        color copies to us in response to the

17        request for production that Big Lots

18        served in this case, have you?

19   A.   I haven't?  I guess I didn't, but -- guess

20        not.  I thought I did, but I must have

21        gave that copy to the judge's office when

22        I -- because I made a -- when I did my

23        responsive questions, on the back of it,

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 145

1    when I put the things, I had a color -- I

2    mean a copy of the pictures.  But I must

3    have gave that copy to the judge and gave

4    y'all the copy of the -- the black and

5    white copy.

6    Q.    And this conduct by Mike Williams occurred

7          between March 28th and 30th, 2005; is that

8          correct?

9    A.    Concerning the pictures, yes.

10   Q.    The conduct about which you're complaining

11         with respect to Mike Williams occurred

12         between March 28th and 30th, 2005?

13   A.    Yes.

14   Q.    Make sure you answer out loud after I've

15         finished what I'm saying, even if you

16         understand what I'm saying, so that it's

17         clear on the record.  Thank you.  All

18         right.  And are the pictures about which

19         you are complaining in this EEOC charge

20         attached to Exhibit B -- or attached,

21         rather, as Exhibit B to the EEOC charge?

22   A.    Yes.

23   Q.    And is it your understanding that Mike

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 146

1          Williams made all of the pictures that are
2          attached as Exhibit B to the EEOC charge?
3     A.   He did.
4     Q.   Okay.  Looking at the first page of this
5          Exhibit B, that's not a picture of you, is
6          it?
7     A.   No, it's not.
8     Q.   And who are the two individuals in that
9          picture?
10    A.   Linda Sankey and Jerry --
11    Q.   I'm sorry?
12    A.   Lindy Sankey.
13    Q.   Linda Sankey?
14    A.   Uh-huh, and Jerry Culpepper.
15    Q.   Okay.  And is Linda Sankey a black female?
16    A.   Yes.
17    Q.   And the other person in the picture --
18    A.   A white --
19    Q.   -- who you've identified as Jerry
20         Culpepper, is a white male, correct?
21    A.   Correct.
22    Q.   And someone has written 3/29/05 on that
23         picture.  Did you do that?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 147

1   A.    No.  When it was hung up by the time clock

2         where we captured these pictures from in

3         the hallway, Linda Sankey, if I'm not

4         mistaken, either her or Autherine, they

5         put the date on it as soon as it happened,

6         the day that they got it down off the wall

7         so that they could know when this

8         happened.

9   Q.    Okay.  Now, is it your understanding that

10        this particular picture was hung up by the

11        time clock?

12  A.    Yes, it was hung up by the time clock.

13  Q.    Did you see it on the wall --

14  A.    I didn't see -- I didn't see it, no.  I

15        just asked them how they got it, and they

16        said he posted it by the time clock.

17  Q.    So your understanding that this was posted

18        was based on what you heard from someone

19        else?

20  A.    Correct.

21  Q.    And Mike Williams didn't give you a copy

22        of this picture?

23  A.    Correct.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 148

1    Q.    And the only way you saw this picture is
2          because Linda Sankey or Autherine Crosky
3          gave you a copy?
4    A.    Yes.
5    Q.    And you don't know personally what day the
6          picture went up?
7    A.    No.
8    Q.    And you don't know personally how long the
9          picture was up?
10   A.    Like time period, no.
11   Q.    And you don't personally even know whether
12         it was ever even hung up, because you
13         never saw it?
14   A.    I never saw it.
15   Q.    So you don't personally know whether it
16         was?
17   A.    I never saw it.
18   Q.    And again, you're not in this picture?
19   A.    Correct.
20   Q.    And you weren't affected by this picture,
21         were you?
22   A.    No.
23   Q.    Do you have any personal knowledge as to

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 150

1          he be just as offended by it as her?

2     A.    Yes.

3     Q.    And the second page of Exhibit B includes

4          pictures of various individuals on play or

5          fake hundred dollar bills; is that right?

6     A.    Correct.

7     Q.    And I'm referring to the left side of the

8          page there.  Now, were these individuals

9          Big Lots employees?

10    A.    Yes.

11    Q.    And are you pictured on any of these

12         pictures?

13    A.    Yes.

14    Q.    Which one?

15    A.    The last one.

16    Q.    The last one in the column?

17    A.    The fifth one in that column.

18    Q.    Fifth one down.  And who are the other

19         employees on these bills?  If you'll just

20         start with the first one at the top left

21         of the page and go down.

22    A.    You've got number one, Autherine Crosky,

23         number two, Barbara Martin, number three,

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 151

1      Linda Sankey, number four, Lola Abner, and
2      the fifth picture is myself, Nicole Reed.
3   Q.   Okay.  Where did this page -- and by that
4      I'm referring to the second page of
5      Exhibit 2 -- where did this come from?
6   A.   The next day -- you see the date at the
7      bottom --
8   Q.   Uh-huh.
9   A.   -- they also found this one posted by the
10      time clock.  I didn't come to work that
11      evening -- I didn't get to work that day
12      until that evening, and when I arrived at
13      work that evening, that's when they had
14      shown me these pictures.
15   Q.   Okay.  So your understanding of the first
16      picture on the first page of Exhibit B is
17      that someone posted this by the time
18      clock --
19   A.   On that day.
20   Q.   -- on the 29th, and then someone else took
21      it down?
22   A.   Uh-huh.  Linda herself took it down.  She
23      said --

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 152

1    Q.    Linda took it down?

2    A.    Uh-huh.

3    Q.    So you don't know personally who posted it

4          or how long it was up there?

5    A.    Not for -- no.

6    Q.    All right.  Now we're on the second page

7          of Exhibit B, which has 3/30/05.  And it's

8          your understanding this was posted near

9          the time clock, this page of these

10         pictures, just like this?

11   A.    Just like this but it was in color.  It

12         was a color copy.

13   Q.    It was posted by the time clock on

14         3/30/05?

15   A.    Correct.

16   Q.    But you don't know who posted it?

17   A.    No.  I didn't personally see who put it up

18         there, and I didn't personally see who

19         took it down.

20   Q.    And you never saw it up?

21   A.    I never -- no.

22   Q.    You never saw this second page of pictures

23         in Exhibit B posted?

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 153

1    A.    I never seen it by -- no.

2    Q.    Never saw it up on display?

3    A.    Correct.

4    Q.    So your understanding that it was

5          displayed near the time clock is only

6          based on what someone else told you?

7    A.    What Autherine told me, the day shift, the

8          ladies who work in the morning time.

9          They're the ones who took it down.

10   Q.    Based on what they tell you?

11   A.    Yeah, based on what they told me.

12   Q.    But again, you don't know anything about

13         that first-hand?

14   A.    Not first-hand.

15   Q.    Do you know whether pictures of all

16         employees who worked in the store at that

17         time were put on play hundred dollar bills

18         by Williams regardless of race or gender?

19   A.    Repeat that again.

20   Q.    Do you know whether pictures of all the

21         employees who worked at Big Lots Store 818

22         were put on the play hundred dollar bills

23         by Williams, regardless of their race or

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 154

1              their gender?

2    A.    No, I don't know.

3    Q.    You don't know whether that happened?

4    A.    No, I don't know.

5    Q.    So again, you don't know if there are

6          other copies of other photographs with

7          different employees on the play hundred

8          dollar bill, do you?

9    A.    I don't know.

10   Q.    You don't know if Mike Williams put his

11         own picture on one?

12   A.    Never seen it if he did.

13   Q.    But do you know?

14   A.    Don't know.

15   Q.    And you don't know whether Jerry Culpepper

16         appeared on one?

17   A.    Don't know.

18   Q.    So in sum, you don't know whether white

19         employees were put on hundred dollar bills

20         by Williams?

21   A.    Don't know.  Never seen it.

22   Q.    And you don't know whether pictures of

23         white employees on the play hundred dollar

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 155

1      bills were posted also?

2  A.   We really didn't have that many white

3      employees at Big Lots.

4  Q.   Okay.  Answer my question.

5  A.   Don't know.

6  Q.   Don't know, okay.  Do you know whether

7      male employees were included on fake or

8      play hundred dollar bills by Mike

9      Williams?

10  A.   Don't know.

11  Q.   And you don't know whether any male

12      employees pictured on play hundred dollar

13      bills were posted near the time clock, do

14      you?

15  A.   Don't -- don't know.  Bogus.  Bogus bills,

16      that's what he called them, bogus cash.

17  Q.   But that's just play money, right?

18  A.   They still discredit the person.

19  Q.   In what way?

20  A.   I mean, it's saying at the top, this

21      person is as bogus as this note, at the

22      top of the bill.  So he's just calling you

23      out of character saying --

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 156

1    Q.    So is that what you find objectionable
2          about it?
3    A.    Yeah.  Because he -- I mean, he hadn't
4          even worked at the store long enough to
5          know your character or to get to know you.
6    Q.    He was a relatively new employee?
7    A.    Right.
8    Q.    Well, do you know whether this is just
9          part of his sense of humor?
10   A.    No, I don't know if that was part of his
11         sense of humor.
12   Q.    You don't know?
13   A.    Huh-uh.
14   Q.    I mean, didn't you think he just thought
15         this was funny?
16   A.    I don't know.
17   Q.    You don't know?
18   A.    He could have, but I don't know.
19   Q.    He could have.  Do you know whether it's
20         possible that he just did this maybe to
21         break the ice and get to know people and
22         have a little fun?
23   A.    Well, I know this wouldn't be a way I

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 157

1          would do it.

2     Q.   Well, but do you know if that's what he

3          intended?

4     A.   Huh-uh, I don't know.

5     Q.   But again, what you find objectionable

6          about this -- what I'll call the play

7          money pictures -- and again, we're talking

8          about these on the left column, the

9          hundred dollar bills -- what you find

10         objectionable is the fact that it says

11         this person is as bogus as this note?  Is

12         that what you have an issue with?

13    A.   Yeah, bogus cash.  Yeah, that's what --

14         yeah.

15    Q.   But these pictures and the text on the

16         bills don't say anything about the

17         employees' race or gender, do they?

18    A.   No, but they're all black females.  All

19         five of them on this picture that we so

20         happened to get was black -- five black

21         females.

22    Q.   On this particular page?

23    A.   Right, on this page.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 158

1    Q.    But you testified that you don't know

2          whether there are others?

3    A.    No, I don't know.

4    Q.    And you testified that the majority of the

5          employees at Store Number 818 were black

6          or African-American; isn't that correct?

7    A.    Correct.

8    Q.    And the majority of the employees there

9          were also women; isn't that correct?

10   A.    Correct.

11   Q.    So again, I'm asking you, these pictures

12         don't show anything about anyone's race,

13         do they?

14   A.    They just -- they're black females.

15   Q.    So -- but is that it, the fact that they

16         just happen to be black?

17   A.    Yeah, they happen to be --

18   Q.    That's the only thing relating to their

19         race, isn't it?

20   A.    Yeah.

21   Q.    And the text doesn't say anything about

22         their race, does it?  The language on the

23         --

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO
bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 159

1    A.    Oh, the text on the bill?

2    Q.    Uh-huh.

3    A.    No, it just calls you bogus.

4    Q.    But that doesn't have anything to do with

5          their race, does it?

6    A.    No.

7    Q.    Are you depicted in any of the other

8          pictures on the second page of this

9          Exhibit B?

10   A.    No, I'm not.

11   Q.    And so these other pictures on this page

12         don't affect you, do they?

13   A.    No.

14   Q.    And that's because you're not in them?

15   A.    Correct.

16   Q.    And many of the pictures on the second

17         page of Exhibit B also include a white

18         male; isn't that correct?

19   A.    Yes, it does.

20   Q.    And who is the white male depicted in the

21         pictures?

22   A.    It looks like -- it appears to be Jerry

23         Culpepper.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 160

1   Q.    And Jerry Culpepper is pictured -- or the

2          white male in these pictures is pictured

3          with silly or funny clothing and making

4          funny or silly comments just like the

5          other individuals in the pictures; isn't

6          that correct?

7   A.    He's making comments.

8   Q.    And he's wearing funny clothes too, right?

9   A.    Yeah.  Yes.

10  Q.    And so only one of the pictures on Page 2

11        of Exhibit B includes you; isn't that

12        correct?

13  A.    Correct.

14  Q.    And you didn't write the date 3/30/05 at

15        the bottom of this page?

16  A.    Correct.

17  Q.    And you don't know who wrote it?

18  A.    Correct.

19  Q.    And you don't know the date that these

20        pictures were made?

21  A.    No.  I just know that was the date I seen

22        them.  I know I seen them that day, the

23        30th.

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 161

1    Q.    When someone handed it to you?

2    A.    Correct.

3    Q.    But you didn't see it hanging up anywhere?

4    A.    Correct.

5    Q.    Isn't it true that none of the pictures on

6          this second page of Exhibit B have

7          anything to do with race or gender?

8    A.    None of what pictures?

9    Q.    On this page.

10   A.    Yes, they do.

11   Q.    There are no references to anyone's race,

12         are there?

13   A.    But they've got these --

14   Q.    Hold on.  I'm asking you a question.

15         There are no references to anyone's gender

16         or race on this page, are there?

17   A.    Oh, like saying it in words?  No words.

18   Q.    Is there any reason you think any of these

19         have anything to do with race?

20   A.    Yes, because they've got these women in

21         clown -- in -- looks like monkey suits.

22         Yes, I do.  And then you've got their --

23   Q.    What pictures are you talking about?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 162

1    A.    I'm talking about this center of this

2          exhibit, the small ones with Autherine,

3          Linda Sankey, and Lola Abner.  He actually

4          had those -- if you see the color copy,

5          you'll be able to tell that that's monkey

6          suits.

7    Q.    Looks like a clown suit to me.

8    A.    Okay.

9    Q.    Do you know what it is?

10   A.    From what it looks like to me, looks like

11         them little -- like you dress one of them

12         little monkeys that you give the change

13         to -- looks like one of those.

14   Q.    But do you know whether those are just

15         clown costumes?

16   A.    Don't know what it is.

17   Q.    Is there anything else that you think

18         relates to race?

19   A.    He put their -- like at the bottom with

20         Lola, he's got her black face and the

21         white neck, white hands.

22   Q.    Why do you think that has anything to do

23         with race?  Couldn't it just be that the

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 163

1          pictures he was using were of white
2          people?
3     A.   He -- see, he actually took the time to
4          turn these people's faces to sit on these
5          bodies, so he premeditated and knew
6          exactly what he was doing to get these
7          pictures to perfection like he did.
8     Q.   Okay.  What does that have to do with
9          race?
10    A.   Because he's got these five black women on
11         these white bodies.
12    Q.   So maybe -- do you know whether these were
13         just the pictures he had on his software
14         program on his computer and this allowed
15         him to do this?
16    A.   I don't know.
17    Q.   You don't know whether he was
18         intentionally trying to make reference to
19         anyone's race or gender, do you?
20    A.   I don't know what his plans were.
21    Q.   You don't know whether he was
22         intentionally trying to harass someone, do
23         you?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 164

1    A.    No.

2    Q.    Or make someone feel bad, do you?

3    A.    I don't know what his plans were.

4    Q.    And you don't know whether Mike Williams

5          was intentionally referring to any race or

6          gender of these folks, do you?

7    A.    I don't know what he was implying.

8    Q.    You testified that you know that Mike

9          Williams made these pictures.

10   A.    We know he made them because on the next

11         page he took our -- he went around and we

12         posed for him to take ID badges.  So you

13         come back the next day or so with the ID

14         badges and our pictures on clown faces,

15         you're the only one had the camera going

16         around the store taking the pictures, so

17         you did these.

18   Q.    That's why you think he did it?

19   A.    Yeah.

20   Q.    He never told you he did it?

21   A.    Oh, he -- he laughed about these pictures.

22         He thought it was funny.  He laughed about

23         them.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 165

1    Q.    So he did think it was funny?

2    A.    Yeah.

3    Q.    Do you know why he thought it was funny?

4    A.    Don't know.

5    Q.    And so the pictures on Page 3 of Exhibit B

6          appear to be the name badges; is that

7          right?

8    A.    Yeah.

9    Q.    And isn't it true that Mike Williams put

10         the pictures of all the store employees on

11         their name badges?

12   A.    I don't think he got around to everybody,

13         because at the time when he first did it,

14         everybody don't be at the store at the

15         same time.

16   Q.    Okay.  Do you know whether he did it?

17   A.    No.  I don't know whether he was able to

18         complete everybody's name badges or how

19         many he got done.

20   Q.    And you don't find any objectionable or

21         discriminatory with respect to these name

22         badge pictures on Page 3 of Exhibit B?

23   A.    As far as the name badges, no, but the

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 167

1          the pictures on there?

2     A.   I don't know what -- I don't know.

3     Q.   So you don't know who actually put these

4          numbers on these badges, do you?

5     A.   No.

6     Q.   And putting someone's social security

7          number or partial social security number

8          on the badges, that doesn't have anything

9          to do with anyone's gender or race, does

10         it?

11    A.   No.

12    Q.   So you don't find these objectionable on

13         that basis, do you?

14    A.   Other than -- no.  Other than social

15         security numbers, no.

16    Q.   But again, that doesn't have -- you don't

17         find them to be related to race or gender,

18         these pictures?

19    A.   Not the name badge pictures, no, not race

20         or gender.

21    Q.   So those aren't really part of your EEOC

22         charge?

23    A.   They was in there to tell the reason how

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 168

1          he got our pictures.

2      Q.   Okay.  So that's what I'm saying.  But

3          they're not really part of this?

4      A.   Correct.

5      Q.   All right.  And again, it was your

6          testimony that you don't have any personal

7          knowledge as to why Mike Williams used the

8          employees' pictures on the play money and

9          in the other pictures about which you were

10         complaining, did you?

11     A.   I don't know why he did it.

12     Q.   And you don't know whether he just had an

13         odd sense of humor and thought it would be

14         funny, do you?

15     A.   I don't know his sense of humor.  I know I

16         didn't find it funny.

17     Q.   And you don't have any personal knowledge

18         as to whether race or gender had anything

19         to do with Williams making these pictures,

20         do you?

21     A.   Other than the black faces on the white

22         bodies, no.

23     Q.   I'm asking you whether that had anything

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 169

1      -- you don't know whether that had

2      anything to do with him making these

3      pictures, do you?

4   A.  Just like we don't know why he did it.

5   Q.  That's what I'm saying.  You don't have

6      any idea why he did this?

7   A.  No.

8   Q.  And you don't know if there are other

9      pictures that include other employees

10     other than these, do you?

11  A.  Have never seen them.

12  Q.  So is that a no, you don't know?

13  A.  Don't know.

14  Q.  Do you know whether any store manager or

15     any other higher level manager gave

16     Williams permission to make these pictures

17     or otherwise knew he was doing it?

18  A.  Don't know.

19  Q.  And again, the only reason you personally

20     saw these pictures is because Autherine

21     Crosky -- or did you say Linda Sankey --

22  A.  Linda.

23  Q.  -- gave them to you?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 170

1    A.    Yeah, brought it up to me to show me.

2    Q.    And you never spoke to Williams about

3          these pictures?

4    A.    No.

5    Q.    And you did not personally complain to

6          anyone else about these pictures, did you?

7    A.    Huh-uh.  Culpepper tried to -- Culpepper

8          tried to explain --

9    Q.    Hold on.  Let's try to answer my question.

10         You didn't personally complain to anybody

11         about these pictures, did you, to any

12         manager?

13   A.    I said something to Culpepper about it,

14         like what happened, you know, how did

15         these get done.  And he was just like --

16   Q.    Hold on.

17   A.    I said I talked to Culpepper.  I don't

18         know if it went on record or paper or

19         nothing like that, but I said something to

20         him.

21   Q.    Tell me -- and by Culpepper, you mean

22         Jerry Culpepper?

23   A.    Jerry Culpepper, yeah.  I just asked him,

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 172

1          him what happened, like this morning,

2          because it happened like that morning.

3          And he was just like, oh, Michael, he --

4    Q.    Which morning are you talking about?

5    A.    The morning of the 30th.  It happened on

6          the --

7    Q.    You think you had a casual conversation

8          with Culpepper on the morning of March

9          30th --

10   A.    Huh-uh, the evening when I got in.  This

11         incident happened in the morning.

12   Q.    Okay.  The evening of March 30th, 2005?

13   A.    Right, when I got to work.  And I just

14         asked him what happened.

15   Q.    You just said, what happened?

16   A.    Yeah.  I was like, how did this get out;

17         what is this.  And he just brushed it off.

18         It wasn't like no, I was coming to see him

19         as a like employee supervisor to complain

20         to him.  It wasn't that type of comment.

21   Q.    That's not how you were treating it?

22   A.    No, that's not how -- huh-uh.

23   Q.    You weren't complaining about them; you

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 173

1        were just asking him what --

2    A.    Trying to figure out what's going on with

3          it, just to see, you know -- just like I'm

4          trying to get up front to get in one of

5          these things, I'm trying to figure out

6          what happened, how did this get out.

7    Q.    You just casually mentioned it to him?

8    A.    Mentioned it, yeah.

9    Q.    And what did he say?

10   A.    He was just like, oh, something that

11         Michael did, don't worry about it.  He

12         said it like that, oh, don't worry about

13         it; it's nothing.  And so I didn't think

14         anything of it that day -- you know, the

15         rest of that day that I was working.

16   Q.    So you just casually mentioned it to him.

17         You didn't complain about it; you just

18         said --

19   A.    No, I didn't complain about it to --

20   Q.    To Jerry --

21   A.    -- higher -- him or higher.  Yeah, I

22         didn't.

23   Q.    All right.  And you didn't say, I have a

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 174

1          problem with these or anything like that;

2          you just asked what they were or where

3          they came from; is that right?

4    A.    Yeah.  I was in that type -- I was more

5          like stunned like that somebody can do it,

6          like what is this; what happened.  I was

7          more like that until I was able to bring

8          them and actually sit down and just think

9          about it.

10   Q.    All right.  But you didn't complain to

11         anyone at Big Lots, a manager or HR or

12         anything, about these pictures?

13   A.    No, I did not.  I personally did not, no.

14   Q.    And you didn't indicate to Jerry Culpepper

15         that you had a problem with the pictures?

16   A.    At that time, no.  No.

17   Q.    Well, I'm just talking about period.  You

18         never -- you didn't discuss these pictures

19         with him again, did you?

20   A.    No, didn't discuss them.

21   Q.    So you just mentioned it the one time, and

22         you didn't tell him that you personally

23         had a problem; you just asked him what you

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 175

1        said you asked him?

2   A.   Uh-huh, what happened and how did they get

3        out, you know.

4   Q.   And there was only the one picture of you

5        as we discussed, correct?

6   A.   Correct.

7   Q.   And so you testified that at that time you

8        -- on the 30th when you saw these and you

9        did mention it to Jerry Culpepper, you

10       didn't have a problem or find these

11       objectionable at that time, did you?

12  A.   I was more shocked, like, that this was

13       done.  That's the type expression I had,

14       like, what?  What is this?  I was more

15       like stunned that he did it, like I can't

16       believe he did that.  That was my

17       expression, like, what?  What is this?

18       Shocked.  So no, I did not complain to

19       Jerry Culpepper at that time, because I

20       was going to him in like shock stage, just

21       froze.

22  Q.   And these are the -- the one picture not

23       of you on Page 1 of Exhibit B and then

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 176

1       these pictures on Page 2 of Exhibit B,

2       these are the only pictures you raised in

3       your EEOC charge, correct?

4    A.   Correct.

5    Q.   All right.  And these are the only

6       pictures you're aware of that are like

7       this?

8    A.   That was taken -- yeah, correct.

9    Q.   During your employment at Big Lots; is

10      that right?

11   A.   Yeah.  Besides the actual name badges --

12   Q.   Well, you said you didn't have an issue

13      with the name badges, so I'm referring to

14      this picture on Page 1 of Exhibit B and

15      these pictures on the second page of

16      Exhibit B.

17   A.   Okay.

18   Q.   These are the only pictures like this that

19      you encountered or came across during your

20      employment at Big Lots, right?

21   A.   Correct.

22   Q.   And it's your understanding that these

23      were taken on March 29th, '05, or made on

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 177

1         March 29th, '05 and March 30th, '05; is
2         that right?
3    A.   Yes.
4    Q.   Do you know at what time or when Big Lots
5         or the other managers at Big Lots found
6         out about these pictures?
7    A.   Don't know.
8    Q.   Don't know.  Do you know whether anyone
9         had mentioned these pictures or shown
10        these pictures to Jerry Culpepper before
11        you mentioned --
12   A.   I don't know.
13   Q.   Did you show them to Jerry Culpepper, or
14        did you just say something about some
15        pictures?
16   A.   Just said something about some pictures.
17   Q.   But you didn't actually have a copy?
18   A.   I didn't actually have a copy, no, in my
19        hand.
20   Q.   So you don't know when Jerry Culpepper --
21        who was the store manager, correct --
22   A.   Correct.
23   Q.   -- you don't know when he saw these --

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 180

1    Q.    You don't know whether he was fired for

2          these pictures, do you?

3    A.    Don't know.

4    Q.    Are you aware that Williams' separation

5          from Big Lots was effective April 11th,

6          2005?

7    A.    Not aware.

8    Q.    Are you aware that as soon as Big Lots

9          learned about these pictures, it

10         investigated the incident?

11   A.    I didn't know.

12   Q.    Isn't it true that after Big Lots learned

13         of the pictures and disciplined Williams,

14         there were no more such pictures?

15   A.    No more pictures, correct.

16   Q.    And would you agree that Big Lots

17         corrected any problems with Mike Williams?

18   A.    I guess.  As far as I recall.

19   Q.    So as far as you know, Big Lots took

20         action when Big Lots found out about these

21         pictures, and there were no more pictures,

22         correct?

23   A.    I was never told that they took action,

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 184

1    this charge?  You just don't know?

2    A.    I don't know.

3    Q.    Ms. Reed, I've just handed you what has

4          been marked as Exhibit 19, which is a

5          dismissal and notice of rights from the

6          EEOC to you.  And is this a copy of the

7          dismissal and notice of rights you

8          received from the EEOC with respect to

9          your EEOC Charge Number 130-2005-05212?

10                   (The referred-to document was

11                   marked for identification as

12                   Defendant's Exhibit No. 19.)

13   A.    Correct.

14   Q.    And the document indicates it was mailed

15         on June 29th, 2005; is that correct?

16   A.    Correct.

17   Q.    And you received it on June 29th or within

18         a few days; is that correct?

19   A.    Correct.

20   Q.    And it states that the EEOC is closing its

21         file on this charge for the following

22         reason, and the box is checked that

23         states, the facts alleged in the charge

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 185

1          failed to state a claim under any of the

2          statutes enforced by the EEOC.  Is that

3          correct?

4     A.   Correct.

5     Q.   And you understood that the EEOC was

6          dismissing your charge, correct?

7     A.   Correct.

8     Q.   I've just handed you Exhibit 20, which is

9          a letter to you from the EEOC.  Do you

10         recognize this letter?

11                   (The referred-to document was

12                    marked for identification as

13                    Defendant's Exhibit No. 20.)

14    A.   Yes.

15    Q.   And this is a letter to you from Allen

16         Gosa with the EEOC, correct?

17    A.   Yes.

18    Q.   And in this letter, the EEOC states that

19         your charge has been dismissed and that

20         from the facts presented the EEOC did not

21         conclude that the photographs or

22         illustrations constitute a racially or

23         sexually hostile work environment; is that

bda54283-b1d2-4c60-a8e5-35ed6c437989

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 186

1          correct?

2     A.   Correct.

3     Q.   When did you first contact a lawyer

4          regarding your employment at Big Lots?

5     A.   When did I first contact a lawyer

6          regarding my employment?  Are you talking

7          about the situation?

8     Q.   Yeah, regarding anything that happened at

9          Big Lots, when did you first contact a

10         lawyer?

11    A.   I can't recall the very first time because

12         I know I done talked to several.  So I

13         really can't recall the very first one I

14         talked to.

15    Q.   You talked to several --

16    A.   Attorneys.

17    Q.   -- before you filed your EEOC charge or

18         after?

19    A.   Before.  So I can't recall like the exact

20         dates of when I sat in these people's

21         office and talked to them.

22    Q.   Was the first lawyer that actually

23         represented you Gary Atchison?

bda54283-b1d2-4c60-a8e5-35ed6c437989