IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NICOLE TAYLOR REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv380-MHT |
| | ) | (WO) |
| BIG LOTS STORES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The plaintiff, Nicole Taylor Reed ("Reed"), an employee of Big Lots Stores, Inc., brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, alleging that she was subjected to discrimination based on her race (African-American) and sex. Specifically, she alleges that she was subjected to a hostile work environment.[1]

This action is pending before the court on the defendant's motion for summary

---

[1] In her complaint, Reed also alleges that the defendants retaliated against her by subjecting her to further harassment and that she was wrongfully terminated from her employment. (Doc. No. 1, p. 2.) In her deposition, Reed testified that she was laid off in January 2006 due to the closing of the store, that her termination is unrelated to the claims in this lawsuit, and that her sole contention in this case is that she was subjected to a hostile work environment based on her race and sex. (Doc. No. 36, pp. 253-54.) Moreover, Reed does not list as enumerated claims or brief the issues concerning retaliation or wrongful termination in her response. (Doc. No. 37.) She alleges no facts and makes no argument in response to the defendant's motion for summary judgment on the retaliation and wrongful termination claims. The burden is on the parties to formulate arguments, and a plaintiff's failure to list an enumerated claim and brief an issue in a memorandum of law in opposition to a defendant's motion for summary judgment is deemed an abandonment of that claim. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274 (11th Cir. 2003); *Thomas v. Alabama Council on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1107 n.1 (M.D. Ala. 2003). *Cf. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Accordingly, the court concludes that Reed has abandoned her retaliation and wrongful termination claims and the defendant's motion for summary judgment on these claims is due to be granted.

judgment. The court has carefully reviewed the motion for summary judgment, the briefs filed in support and in opposition to the motion, and the supporting and opposing evidentiary materials and concludes that the defendant's motion for summary judgment should be granted.

## II. THE STANDARD OF REVIEW

Under FED.R.CIV.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present

---

[2] In *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986), the court stated:

> "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial...We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . .

*Id.* at 324.

2

evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED.R.CIV.P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995). However, if there is a conflict in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving

party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

Viewed in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the following facts are treated as undisputed for the purpose of summary judgment.[3] Reed was employed by Big Lots as a part-time cashier and associate from December 13, 2003, until the store's closing in January 11, 2006. (Doc. No. 36, Def's Ex. A, pp. 110, 253.) Shortly after being hired, Reed received an employee handbook, which included Big Lots' policy on harassment and discrimination in the workplace. (*Id*., p. 112.) In addition to listing prohibited conduct, the policy encouraged Big Lots' employees to report incidents of harassment to their supervisor or the Human Resources Department. (Doc. No. 36, Def's Ex. A, Attach. to Reed's Dep.; Def's Ex. B, Attach. to Abrams' Affid.) Big Lots also had an open-door policy, under which employees are allowed to bring any questions or concerns to an immediate supervisor, a next-level manager, or to the Human Resources Department. (Doc. No. 36, Def's Ex. A, p. 118-19 and Attach. to Reed's Dep.) Reed

---

[3] The defendant submitted a corrected statement of undisputed material facts. (Doc. No. 36.) It is clear from Reed's response that, with the exception of the allegations related to the timeliness of her claims, Reed does not dispute any of the facts alleged in the defendant's statement. (Doc. No. 37.) Consequently, except for the facts related to the timeliness issue, this court will treat all of the facts in the defendant's corrected statement as undisputed.

received training on how to use Big Lots' "Get Real Hotline," a toll-free complaint number.[4] (Def's Ex. A, p. 122.)

During her employment with Big Lots, Reed set high standards for herself and for those with whom she worked. For instance, while working part-time, Reed earned a Bachelor of Science degree in Human Resources Management and an Associate Degree in General Science and Education from Troy State University of Montgomery. (*Id*., p. 49.) Reed also consistently received positive evaluations from Big Lots' supervisors. (*Id*., p. 134.) She never used profanity around employees, and she expected her supervisors to refrain from cursing or behaving inappropriately around her. (*Id*., pp. 134, 232.)

On occasion, Reed was offended by her supervisors' actions and remarks. For instance, on or around March 30, 2005, Linda Sankey, another employee, showed Reed a document in which photographs of Reed's and other African-American female employees' faces were superimposed onto fake $100 bills.[5] (Def's Ex. A, p. 150-51.) Reed felt that, because the fake money was imprinted with the term "bogus cash," the document "discredited the person" by "saying . . . [that] this person is as bogus as this note." (*Id*., p.

---

[4] The Open Door policy provided that "associates wishing to make anonymous complaints or ask a question may call the Get Real Hotline at 1-866-834-REAL (1-888-834-7325)." (Doc. No. 36, Def's Ex. A, Attach. to Reed's Dep.)

[5] The document also included photographs of the faces of other African-American employees and a Caucasian supervisor superimposed onto pictures of other people. For example, one picture depicts an African-American female employee's face superimposed onto another woman's body with the caption "I wonder how long will it take for him to get the courage to try to kiss me" and a Caucasian male supervisor's face superimposed onto a man's body with the caption "Took me half the movie. . . but I finally got my arm around her." (Doc. No. 1, Attach. 4.) Reed's photograph is not included in these pictures.

155.) Reed believes that Mike Williams ("Williams"), an associate store manager, created the document. (*Id.*, p. 145.) Shortly after the incident, Reed casually mentioned the photographs to Jerry Culpepper ("Culpepper"), a Caucasian store manager.[6] (Id., pp. 128-29, 146.) On April 5, 2005, Williams was disciplined for violating Big Lots' standards of conduct. (Doc. No. 36, Def's Ex. B, Abrams' Affid., p. 2; Def's Ex. E.) The following week, Williams resigned from his employment at Big Lots. (Def's Ex. B, Abrams' Affid., p. 2.)

In February 2005, Reed was offended by one of Culpepper's remarks. After another employee told her co-workers that she had been approached by a stranger who exposed himself to her in a parking lot the previous day, Culpepper told Reed and other employees that the situation reminded him of a movie scene. (Def's Ex. A, p. 193.) Specifically, Culpepper recalled a film scene where a white man was the manager of a black employee and that, when the manager began looking for the employee, the employee said that "he was just shaking my bush." (*Id.*) During this conversation, Reed felt humiliated and insulted by "a white male ... sitting here telling us a story about a black male behind a bush shaking his privates." (*Id.*, p. 200.) At that time, Reed had not seen the movie and did not know what Culpepper meant by his comment.[7] (*Id.*, p. 198.) On another occasion in March 2005, Reed

---

[6] Reed did not tell Culpepper that she had a problem with the pictures or otherwise complain to Culpepper, another manager, or the Human Resources Department regarding the document. (Def's Ex. A, p. 172-75.)

[7] The record does not indicate the name of the movie and this court will not speculate as to the specific film referenced by Reed's supervisor. The court, however, notes there is a similar scene in the Academy-Award winning film *Cool Hand Luke*, in which Luke leaves the chain-gang to urinate behind a bush and must prove he has not run away by "shaking the bush." *See* en.wikipedia.org/ wiki/Cool_Hand_Luke.

found Culpepper's use of a curse word to be objectionable when he said, "These customers get on my fucking nerves." (*Id*., pp. 210, 229.) She did not complain to any supervisors or the Human Resources Department about Culpepper's film reference or use of profanity. (*Id*., pp. 208-09, 214-15.)

On June 16, 2005, Reed submitted a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"), in which she complained about the photograph incident in March 2005, as well as the "management at Big Lots, Inc., Store 818, . . . during the last 180 days . . . [making] many comments and statements of a racially and sexually harassing nature toward, about, and to [her]. . . ." (Doc. No. 1, Attach. to Complaint; Doc. No. 36, Def's Ex. C.) On June 29, 2005, the EEOC sent Reed a notice of right to sue in federal or state court. (Doc. No. 36, Def's Ex. D.)

A few weeks after the EEOC closed its investigation of Reed's initial EEOC charge, Reed became offended by another supervisor's actions. Specifically, on July 18, 2005, Billy Pridgen, an assistant manager, began talking to Reed and Lisa Poole, another female employee, about the "little bitty coconut bras" on display in the store. (Def's Ex. A, pp. 125, 215-17.) Pridgen placed his hand on his chest and said, "[Y]ou and Lisa are the only ones who can wear those coconut bras." (*Id*.) Reed did not complain to another supervisor or anyone in the Human Resources Department about Pridgen's comment. (*Id*., pp. 221-22.)

---

Perhaps, given that Reed had not seen the film and was uncertain of the meaning behind Culpepper's comment, the more applicable movie quote in this case is "What we have here is a failure to communicate." *Cool Hand Luke* (Warner Bros. 1967). *Cf. Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1465 n. 9 (11th Cir. 1997); *Delaney's v. Illinois Union Ins. Co.*, 894 F.2d 1300, 1302 (11th Cir. 1990) (quoting "the immortal words of the chain gang boss in the movie *Cool Hand Luke*").

On another occasion in August 2005, after giving soft drinks to Reed and several other employees, Culpepper said "I'm going to tell you like the old folks used to tell me, all I want to see now is ass and elbows." (*Id*., p. 222.) Reed's understanding from Culpepper's comment was that he wanted the employees to "get to work." (*Id*., p. 226-27.) Reed did not complain to anyone at Big Lots about Culpepper's comment. (*Id*., p. 234.)

On September 16, 2005, Reed submitted an additional charge of discrimination to the EEOC, in which she raised the same claims as raised in her prior charge. (Doc. No. 36, Def's Ex. E.) She also identified specific behavior and remarks from her supervisors that she believes contributed to a hostile work environment. (*Id*.) On February 6, 2006, the EEOC sent Reed a right-to-sue notice. (Def's Ex. F.) Reed filed the instant lawsuit on April 26, 2006. (Doc. No. 1.)

### IV.  DISCUSSION

Reed asserts that she was subjected to a hostile work environment because of her race and sex in violation of Title VII. The defendants, however, argue that all of the claims raised in Reed's initial EEOC charge are time-barred because Reed failed to bring suit within ninety days of receiving the right-to-sue notice. (Doc. No. 35, pp. 2-7.) Specifically, the defendants contend that Reed's claims concerning (1) Williams' creation of fake money with Reed's photograph in March 2005, (2) Culpepper's comment about a movie scene in February 2005, and (3) Culpepper's use of a curse word in March 2005 are untimely. In her response, Reed concedes that she submitted the same photographs in her initial EEOC complaint, as well as in her September 16, 2005, EEOC complaint; however, she denies that the charges

concerning Culpepper's and Pridgen's specific comments were raised in her September 16, 2005, EEOC complaint. (Doc. No. 37.)

Reed had 90 days from the date she received her notice of her right to sue from the EEOC to file a civil action challenging the claims raised in her first EEOC complaint in the United States District Court. *See* 42 U.S.C. § 2000e-5(f)(1); *Law v. Hercules, Inc.*, 713 F.2d 691, 692 (11th Cir. 1983); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999). The evidentiary materials clearly indicate that, on June 29, 2005, the EEOC sent a right-to-sue letter to Reed. (Def's Ex. D.) It is undisputed that Reed did not file a lawsuit in this court within ninety days of her receipt of the June 29, 2005, right to sue letter. (Doc. No. 35, p. 5; Doc. No. 37.) Consequently, the defendant asserts that, with respect to the claims raised in Reed's first EEOC complaint, Reed failed to file her complaint in this court in a timely manner. Once the defendant raises the issue of timeliness, the plaintiff bears the burden of establishing that his complaint satisfies the 90-day rule or establishing that any untimeliness is excused by an equitable exception. The plaintiff bears the burden of establishing the applicability of the doctrine of equitable tolling. *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000).

Under Title VII, failure to file a complaint within the 90-day time period bars the action. 42 U.S.C. § 2000e-5(f)(1). The ninety day period begins to run upon receipt of the right to sue letter. *Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991). In this circuit, the court must apply a case-by-case approach "to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to

9

assume some minimal responsibility in resolving their claims without "conditioning a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out by the statute." *Zillyette*, 179 F.3d at 1340.

There is no dispute that Reed did not file this lawsuit within 90 days of receiving the June 29, 2005, right-to-sue notice. Instead of filing a lawsuit in this court, Reed submitted an additional EEOC complaint on September 16, 2005, which included similar claims as alleged in her prior EEOC filing as well as additional claims. (Def's Ex. E.) After receiving a February 6, 2006, right-to-sue letter from the EEOC, Reed filed a lawsuit in this court on April 26, 2006.

In her response, Reed argues that all of her claims in this lawsuit are timely because her specific allegations against Williams, Pridgen, and Culpepper were raised for the first time in her second EEOC complaint. The defendant, however, asseverates that Reed's claims concerning Williams' creation of fake money and any statements made before June 16, 2005, are untimely because those charges were raised in her first EEOC complaint and were not filed within 90 days of her receipt of the June 29, 2005, right-to-sue letter. (Doc. No. 35, p. 5.)

The evidentiary materials clearly indicate that Reed raised identical claims concerning the photographs allegedly taken by Williams in both EEOC complaints.[8] (Def's Ex. C; Def's

---

[8] In both EEOC complaints, Reed attached the same photographs and alleged the following:
That said Charging Party was supervised on March 28-30, 2005 by Michael Williams, a White or Caucasian male associate store manager and Jerry Culpepper, a White or Caucasian male store manager. On said dates the Charging Party was subjected to race and sex discrimination and or a

Ex. E.) A Title VII plaintiff is not permitted to extend the 90-day period "by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple right to sue letters." *Dowdell v. Sunshine Biscuits, Inc.*, 90 F.R.D. 107, 116 (M.D. Ga. 1981). *See also Comrie v. Bronx Lebanon Hosp.*, 133 F.3d 906, 1998 WL 29643, at *2 (2nd Cir. 1998) (citing *Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827 (2nd Cir. 1986) (noting that, if an initial EEOC complaint is time barred and a second EEOC complaint is filed, dismissal is appropriate for all of those claims previously alleged in the first EEOC complaint.) Thus, the court concludes that Reed's claims concerning the photographs and pictures created by Williams are time-barred.

It is arguable that Reed's specific claims concerning the comments by Culpepper in February and March 2005 are not time barred. Although Reed asserted a general claim that "management at Big Lots . . . during the last 180 days has made many comments and statements of a racially and sexually harassing nature toward, about, and to the Charging party" in her first EEOC charge, she indicated in her deposition testimony that she was uncertain whether she discussed the February and March 2005 incidents with an EEOC officer during the initial proceedings. (Def's Ex. A, p. 217) It is unnecessary for the court to determine the timeliness issue with respect to those claims because, even assuming the

---

racially and sexually hostile environment at Big Lots, Store 818 in Montgomery, Alabama by acts of Michael Williams *et al.* in which he subjected said African American female employee to sexual and racial discrimination, and sexual and racial harassment by his ridicule, etc. of the Charging Party by using photographs, cartoon type pictures and captions that were defaming, intrusive and invasive of privacy and were racially and sexually harassing, etc. as per Exhibit B, attached, etc.

claims concerning the February and March 2005 comments were timely filed, the undisputed evidence clearly demonstrates that Reed has failed to establish a prima facie case of hostile work environment.

Under the law of this circuit, an employee establishes a prima facie case of hostile work environment by demonstrating: (1) that she is a member of a protected class, (2) that she was subjected to unwelcome conduct, (3) that the conduct was on the basis of sex, and (4) that the conduct affected a term or condition of employment; and (5) a basis for holding the employer liable. *See generally Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*).

In this case, Reed alleges that the following incidents constitute racial and/or sexual harassment:

- In February 2005, Culpepper discussed a movie scene where a black employee said to a white manager that "he was just shaking my bush."

- In March 2005, Culpepper said, "These customers get on my fucking nerves."

- In July 2005, Pridgen placed his hand on his chest and said, "[Y]ou and Lisa are the only ones who can wear those coconut bras."

- In August 2005, Culpepper said, "I'm going to tell you like the old folks used to tell me, all I want to see now is ass and elbows."[9]

---

[9] Reed also alleges that, in March 2005, Williams superimposed a photograph of her face onto fake money and created pictures of other employees in which their faces were superimposed onto other photographs with various captions above them. As previously discussed, this allegation is clearly time-barred. Thus, the court will not make a determination on the merits with respect to this contention. The court notes,

The court concludes that Reed has failed to establish a prima facie case of hostile work environment because the record contains no evidence that the alleged conduct affected a term or condition of her employment. Before making this determination, the court must consider the employee's subjective perception of the alleged harassment and determine whether the alleged harassment objectively altered the terms and conditions of Reed's employment. *See Mendoza*, 195 F.3d at 1246. As a guideline for assessing this objective standard, courts consider four non-exhaustive factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.*

"To constitute an actionable hostile environment, conduct must be ... 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). While racially or sexually derogatory or demeaning comments are abhorrent, the law clearly "prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Blevins v. Heilig-Meyers Corp.*, 52 F.Supp.2d 1337 (M.D. Ala. 1998) (citing *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997)), *aff'd by* 184 F.3d 825 (11th Cir. 1999). *See also Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007,

---

however, that even assuming the timeliness of the claim, it is clear that Williams' posting of a picture in the workplace was an isolated incident. In addition, Reed admits that the picture depicting her face on fake money was unrelated to her race and gender. (Def's Ex. A, pp. 157-59, 161-63.)

1010 (7th Cir. 1994) ("Workers, like other people, often are foul-mouthed and . . . employers are not under a legal duty enforceable by suits under Title VII to purify the language of the workplace.").

Although Title VII clearly prohibits discrimination based on race and sex, "Title VII is not a federal 'civility code.'" *Mendoza*, 195 F.3d at 1245. As one court aptly noted, "Title VII is not a federal guarantee of refinement and sophistication in the workplace.... [I]t prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Blevins v. Heilig-Meyers Corp.*, 52 F.Supp.2d 1337 (M.D. Ala. 1998). Moreover, if an employee "does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21-22.

In this case, Reed complains about sporadic and stray statements or incidents by two supervisors that occurred at Big Lots in 2005. At best, Reed complains of isolated incidents in which offensive utterances were made over a one year period, none of which were physically threatening. This is not a situation where offensive comments were so "commonplace, overt and denigrating" that a reasonable jury could conclude that "they created an atmosphere charged with . . . hostility." *Edwards v. Wallace Cmty Coll.*, 49 F.3d 1517,1521-22 (11th Cir. 1995); *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990). The evidence presented by Reed does not rise to this level.[10]

---

[10] Albeit in the retaliation context, the Supreme Court has recently emphasized the point that Title VII does not immunize "employee[s] from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern and Santa Fe Ry. Co. v. White*, __ U.S. __, __, 126

Perhaps, more importantly, Reed presents no evidence that Culpepper's comments were motivated by race or sex, could be construed as sexually or racially offensive, or were made because of Reed's gender or race. Undoubtedly, Pridgen's comment concerning the coconut bras was sexually offensive; however, this single incident does not rise to the level of a sexually hostile work environment.

Applying the *Harris* factors to the totality of the events in this case, the court concludes that Red has not established a genuine issue of material fact regarding whether the conduct at issue was sufficiently severe of pervasive to alter the terms and conditions of her employment. Consequently, the actions about which Reed complains do not rise to the level of a hostile work environment. Accordingly, the defendant is entitled to summary judgment.

## VI.  CONCLUSION

Accordingly, it is the Recommendation of the Magistrate Judge that the defendant's motion for summary judgment (doc. # 15) be GRANTED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before June 13, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

---

S.Ct. 2405, 2415 (2006). That, however, is not to say that employers should not be concerned about these so-called "microinequities" which are too common in some workplaces. *See* Tate, Eric A. and Jenkins, Mahogany P., *Microinequities: Can Bad Behavior Be Actionable?*, The Nat'l Law J., May 21, 2007, at S3.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 31st day of May, 2007.

       /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE